**UNITED FARM BUREAU MUTUAL INSURANCE COMPANY d/b/a Farm Bureau Insurance, Appellant (Defendant Below),**

v.

**Harold L. IRA, Appellee
(Plaintiff Below).**

No. 53A04–9007–CV–357.

Court of Appeals of Indiana,
Fourth District.

Aug. 27, 1991.

James W. Riley, Jr., Ryan L. Leitch, Riley, Bennett & Egloff, Indianapolis, for appellant.

William C. Lloyd, Ferguson, Ferguson & Lloyd, Bloomington, for appellee.

CONOVER, Judge.

Defendant–Appellant United Farm Bureau Mutual Insurance Company (Farm Bureau) appeals the trial court's ruling in favor of Plaintiff–Appellee Harold Ira (Ira).

We affirm.

Farm Bureau presents eight issues for our review, which we have consolidated and restated:

1. whether the trial court had subject matter jurisdiction to enforce the agreed judgment;

2. whether the trial court erred in conducting an indirect contempt proceeding;

3. whether the trial court erred in failing to specifically find the medical expenses were reasonably related to the accident;

4. whether the trial court erred in its conclusion of law Farm Bureau violated its duty of good faith, and

5. whether compensatory damages, punitive damages, and attorneys fees are available to the court as remedies in an action for enforcement of agreed judgment and indirect contempt of court.

United Farm Bureau was Ira's auto insurance carrier. It became obligated by an agreed judgment to pay Ira's future medical expenses reasonably related to a 1981 car accident under the Michigan No–Fault law. In July, 1988, Ira underwent his third surgery. To support his claim for these expenses, he sent Farm Bureau letters from two physicians, Dr. Shields and Dr. Jelsma. Dr. Shields stated Ira's injuries were related to the 1981 accident but did not recommend surgery. Dr. Jelsma's letter stated Ira's cervical arthritis was acquired and probably aggravated by an accident in 1981.

Farm Bureau refused to pay, claiming Dr. Jelsma's letter created some doubts as to causation. Farm Bureau then contracted for the services of a medical advisory service to render an opinion. The physician who prepared the advisory report never examined Ira and based his opinion on documents sent to the service by Farm Bureau. Ira was forced to file a petition for bankruptcy in November, 1988.

In December, 1988, Dr. Jelsma submitted a second letter to establish a causal relationship. Farm Bureau attempted to negotiate a compromise for one-third of Ira's medical expenses.

In January, 1989, Ira filed a petition for enforcement of the agreed judgment and for a finding of indirect contempt of court.

After a pretrial conference, Ira took Dr. Jelsma's deposition in which he again established a relatedness. Later, at an "in camera" conference, Farm Bureau offered to pay Ira's medical expenses if all further proceedings would be dismissed. Ira refused.

After trial, the trial court determined the medical expenses were reasonably related to the accident and ordered the expenses paid. The court also found the attempts to persuade the insured to give up his action for damages for a present cash payment to be oppressive and in bad faith. The court ordered Farm Bureau to pay medical bills (stipulated by the parties to be $18,367.15) and compensatory damages of $37,000 and punitive damages of $105,000 together with statutory interest of $2,295.75.

In May, 1990, Ira filed a motion to correct errors and for additur. The Court awarded Ira additional compensatory damages to pay Ira's attorney fees by increasing its award of medical bills and compensatory damages to $55,000. The resulting total judgment is $162,295.75. Farm Bureau appeals.

██ Initially, we note this was a bench trial in which the trial court made findings of fact and conclusions of law pursuant to Ira's request. When the trial court has made special findings, the court on appeal must apply a two-tiered standard of review. First, the court must determine whether the evidence supports the findings. Then, it must determine whether the findings support the judgment. If the court concludes that the special findings support the judgment and are not clearly erroneous, the judgment must be affirmed. *Buchonok v. Emerick* (1990), Ind., 558 N.E.2d 1092, 1096. We will consider only the evidence in the record which supports the judgment along with the reasonable infer-

ences to be drawn from the evidence. *Craig v. ERA Mark Five Realtors* (1987), Ind.App., 509 N.E.2d 1144, 1147.

The first issue Farm Bureau raises is whether the trial court had subject matter jurisdiction. Farm Bureau strongly urges an agreed judgment is contractual in nature and does not represent a judgment of the court. Farm Bureau urges it is governed only by the decree portion of the judgment which stated the action was dismissed with prejudice. (R. 28). Therefore, it posits the court did not retain subject matter jurisdiction since dismissed actions are as if they never existed.[1] We disagree.

Subject matter jurisdiction refers to the power to hear and determine a general class or kind of case. If the tribunal possesses the power to determine cases of the general class to which the particular case belongs, it possesses subject matter jurisdiction to consider a particular case. *State ex. rel. Hight v. Marion Superior Court* (1989), Ind., 547 N.E.2d 267, 269.

██ If there is some question as to the exact meaning of a judgment, the court may go further than the decree portion in construing the language of the judgment. Courts have inherent power to entertain an action to determine whether a judgment has been carried out and satisfied. *Wilson v. Wilson* (1976), 169 Ind.App. 530, 349 N.E.2d 277, 279. A judgment may have prospective application. *State v. Martinsville Development Co. Inc.* (1977), 174 Ind. App. 157, 366 N.E.2d 681.

The judgment also states Farm Bureau shall pay future medical expenses reasonably related to the accident. (R. 28). If the judgment only dismissed the action, the agreed judgment for reasonably related future medical payments would be ineffectual.[2]

---

1. Farm Bureau does not cite to any case law which holds an agreed judgment dismisses the case. *Burnett v. Camden* (1970), 253 Ind. 354, 254 N.E.2d 199, *reh. denied,* involved a voluntary dismissal, not an agreed judgment. *Kohlman v. Finkelstein* (1987), Ind.App., 509 N.E.2d 228, involved a conversion action which was dismissed because the monetary jurisdictional limit was too high for the original court.

2. Farm Bureau's position would allow it to resist payment of all medical expenses until a court ordered payment and then to appeal, contending Ira must file a new lawsuit each time for interpretation of the agreed judgment. Furthermore, this process would have to be repeated each time Farm Bureau refused to pay Ira's medical bills.

A consent judgment is both contractual in nature and an entry of judgment. *Ingoglia v. The Fogelson Companies* (1988), Ind.App., 530 N.E.2d 1190, 1199, *reh. denied.* A compromise or settlement of litigation is always referable to the action or proceeding in the court where the compromise was effective; it is through that court the carrying out of the agreement should thereafter be controlled. The twin interests of judicial economy and encouragement of settlement agreements are both served by an enforcement proceeding in the court where the compromise was effected. *Brant Construction Company, Inc. v. Lumen Construction, Inc.* (1987), Ind.App., 515 N.E.2d 868, 876, *trans. denied.* The trial court had subject matter jurisdiction to enforce its judgment.

Farm Bureau alleges the trial court erred in conducting an indirect contempt proceeding. Farm Bureau contends that the order portion of the agreed judgment did not contain order language; therefore, it did not disobey any command of the court for which it could be held in contempt.

Farm Bureau urges the agreed judgment merely declared the rights of the parties without an express command and cannot provide the foundation for contempt. Farm Bureau cites *Nicholas v. Nicholas* (1985), Ind.App., 482 N.E.2d 770, and *H.K. Porter Co., Inc. v. Nat. Friction Products* (7th Cir.1978), 568 F.2d 24, for the proposition there must be specific language in the judgment portion of the decree turning a contractual duty into an operative command of the court before a contempt action is available.

Farm Bureau raises the inappropriateness of contempt as a proper remedy for the first time in its appellate brief.[3] Farm Bureau failed to allege the inappropriateness of the remedy in its Answer Re: Indirect Contempt (R. 60–63), failed to raise the same in any proceedings prior to trial, and failed to object at trial. We cannot consider an issue raised for the first time on appeal. *Christensen v. Sears, Roebuck and Co.* (1991), Ind.App., 565 N.E.2d 1103, 1107, *reh. denied.* Ind.Appellate Rule 8.3(A)(7).

Farm Bureau argues if the language requiring it to pay future medical expenses was, in fact, a judgment, then it was a money judgment for which execution or proceedings supplemental are the exclusive remedies, not a contempt action. We disagree.

The key to a money judgment is the statement of an amount due. A money judgment must be certain and definite. It must name the amount due. *Kist v. Coughlin* (1944), 222 Ind. 639, 57 N.E.2d 199, modified on other grounds, 222 Ind. 639, 57 N.E.2d 586.[4]

The total amount the agreed judgment requires Farm Bureau to pay is not certain or definite. It directs future payments as relatedness is established. Therefore, the agreed judgment was not a money judgment. The trial court did not err in conducting a contempt proceeding.

Farm Bureau next alleges the trial court erred because it did not specifically state in its findings of fact the medical expenses were related to the accident.

---

**3.** Contrary to Farm Bureau's contention, this is not a question of subject matter jurisdiction which cannot be waived and may be raised any time. A court has inherent power to see that its orders and judgments are carried out. 60 C.J.S. § 67. Subject matter jurisdiction refers only to the power of the court to hear and decide a particular class of cases. *Behme v. Behme* (1988), Ind.App., 519 N.E.2d 578, 583, *reh. denied.* As discussed previously, the trial court had subject matter jurisdiction to determine compliance with the agreed judgment and also to determine whether Farm Bureau was in breach of its contractual duty of good faith.

**4.** Farm Bureau suggests not all judgments for money are certain and definite. Farm Bureau points out in *Kist, supra,* our supreme court affirmed a money judgment which did not include a statement of the amount due. (Appellant's Reply Brief p. 7). However, we note the issue revolved around the existence of a partnership whose value could only be ascertained after an accounting. The amount due would become definite once the accounting of the partnership assets was complete. This case does not hold money judgments can be for indefinite amounts.

Findings of fact are to be liberally construed together, consistent with the resulting judgment. A fair inference can be drawn from them. *Buchonok, supra,* at 1095. We note finding no. 19 states Dr. Jelsma's December 13, 1988, letter asserted the operation was a result of the 1981 accident. (R. 166). A fair inference can be drawn from this finding that the medical expenses were reasonably related to the accident.

Farm Bureau also urges the evidence does not support the finding that Dr. Jelsma's December letter established the surgery was related to the accident. We disagree.

Dr. Jelsma's December letter stated "the report *would suggest* that the changes occurred immediately after the accident and were related to the accident itself and then aggravated with the passage of time...." (Emphasis supplied). (R. 1491).

Medicine is not yet an exact science. No threshold level of certainty or conclusiveness is required in an expert's opinion. *Strong v. State* (1989), Ind., 538 N.E.2d 924, 931. The December letter was sufficiently certain to base a finding of relatedness on it. The trial court's finding was not clearly erroneous.

Additionally, Farm Bureau alleges because relatedness was not established until after the April, 1990, court order, it did not have a reasonable opportunity to make payment. Further, Farm Bureau urges the trial court should have dismissed the contempt proceeding when it offered to pay the expenses at the "in camera" conference in November, 1989.

Farm Bureau received letters from Ira's physicians establishing relatedness in July, 1988. Dr. Jelsma's December letter again sustained causation. Dr. Jelsma's deposition further established a causation relationship. At the "in camera" conference, Farm Bureau only offered to pay the medical expenses (of which some were uncontested) if Ira dismissed his suit against Farm Bureau. When Ira refused to dismiss the suit, Farm Bureau did not tender payment until after the April, 1990, order.

Looking to the record, we find definite evidence to establish Ira's later problems were accident-related before the April order, and Farm Bureau had ample opportunity to pay his surgical expenses. Additionally, the trial court was under no obligation to dismiss Ira's entire action after Farm Bureau's payment offer.

Farm Bureau next contends the trial court erred in making a conclusion of law that Farm Bureau violated its duty of good faith because it was based upon incorrect findings of fact which were not supported by the evidence.[5] We disagree.

Specifically, Farm Bureau contends: (a) it did not mislead the court by concealing part of the Advisory Service Report, (b) nor did it attempt to justify its non-payment on the first 12 pages of the Advisory Service Report, (c) nor did it resist Ira's medical expenses because of a concern in its internal "resist" memo which stated it could be liable for Ira's medical expenses for the rest of his life, (d) nor did its conduct contribute to Ira's financial ruin.

Rather than requesting additional medical information from Ira's doctors or requesting an independent medical evaluation to clear up any questions of causation, Farm Bureau requested an independent review of the file from Dr. Bauer of the National Medical Advisory Service. (R. 381). Dr. Bauer, who never examined Ira and only reviewed the medical records sent by Farm Bureau, questioned causation in his report. However, Farm Bureau did not file pages 13 and 14 of the advisory service report when it filed its response to request for findings and default with the trial court. (R. 48–59). Page 14 stated in order to substantiate the opinions rendered in that report (or refute them) further records were needed. Farm Bureau never provided any further records. The trial judge felt page 14 weighed heavily over any other language contained in pages 1 through 12 of the report. The trial court could have

---

5. An insurer has a duty of good faith and fair dealing with respect to its handling of its insured's claim. *Craft v. Economy Fire & Casualty* (7th Cir.1978), 572 F.2d 565, 570.

reasonably concluded this action amounted to concealment in an attempt to justify non-payment.

A Farm Bureau internal memo stated, "It appears that if we do not resist this situation, at some point in time, that due to the degenerative nature of Mr. Ira's spine we will continue to make the payments to him for the rest of his life." (R. 1413, 1595). Since Farm Bureau refused to pay Ira's expenses despite documentation, it is reasonable for the trial court to conclude Farm Bureau was relying on the report as a justification for resisting payment.

Farm Bureau contends its conduct did not contribute to Ira's financial ruin and eventual bankruptcy. However, the trial court did not state Farm Bureau's failure to pay was the only cause of Ira's bankruptcy, only that it contributed to his financial ruin. We find no reversible error in this finding.

Farm Bureau in its last issue states the trial court erred in its award of compensatory damages, punitive damages, and attorneys fees. We disagree.

Farm Bureau urges after payment of medical bills the remaining compensatory damages were erroneously awarded in a contempt proceeding for the emotional distress Ira suffered. It points to the trial court's conclusion of law which stated Farm Bureau's oppressive conduct caused Ira great emotional distress. (R. 168).

Farm Bureau fails to consider the awards by the trial court were based on the trial court's finding that Farm Bureau breached its duty of good faith and contractually and tortiously violated the agreed judgment.

■ The inconvenience and frustration suffered by the aggrieved party are proper elements to be considered in a contempt proceeding. *Thomas v. Woollen* (1971), 255 Ind. 612, 266 N.E.2d 20, 22.

■ In the instant case, the trial court considered Ira's frustration and inconvenience due to Farm Bureau's bad faith resistance of his claim, inability to purchase medication or obtain health insurance, and his bankruptcy as factors in determining the damage award.

If a damage award is within the scope of the evidence, the determination of damages is within the sound discretion of the trial judge. *Liberty Mutual Insurance Co. v. Parkinson* (1985), Ind.App., 487 N.E.2d 162, 165, *reh. denied.* Despite the trial court's wording in the conclusion, we find no reversible error in the trial court's award of compensatory damages.

Farm Bureau also contends the trial court erred in its assessment of prejudgment interest because there is no finding or conclusion of law establishing when the amounts were owed or what rate of interest was awarded. Farm Bureau argues the applicable rate to be eight percent under IC 24-4.6-1-102, which sets the interest rate where the parties have not agreed on the rate.

At trial, Ira introduced two exhibits pertaining to the calculation of interest. (R. 1496-1497, 1332-1334). Farm Bureau did not object at trial to the rate. (R. 1333).

The trial court in its conclusions of law stated the statutory rate of interest applied from January 1, 1989, to February 21, 1990. (R. 168). The trial court did not err in applying the statutory rate of ten percent which applies to a judgment for money under IC 24-4.6-1-101.[6]

■ Farm Bureau next contends the trial court erred in awarding punitive damages in a civil contempt proceeding. Farm Bureau correctly states the remedy of civil contempt is intended to coerce compliance

---

**6.** IC 24-4.6-1-101 reads:

Except as otherwise provided by statute, interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:

(1) the rate agreed upon in the original contract sued upon, which shall not exceed an annual rate of ten percent (10%) even though a higher rate of interest may properly have been charged according to the contract prior to judgment; or

(2) an annual rate of ten percent (10%) if there was no contract by the parties.

with a court's order or judgment, not to punish a noncompliant party. *Duemling v. Fort Wayne Community Concerts, Inc.* (1963), 243 Ind. 521, 524, 188 N.E.2d 274, 276.

However, the trial court assessed punitive damages because it not only found Farm Bureau was an indirect contempt of court, but also because it found Farm Bureau breached its duty of good faith toward its own insured, a breach contractual and tortious. (R. 166–167).

Farm Bureau claims its conduct did not rise to the reprehensible standard necessary to support a punitive damage award. Farm Bureau claims its conduct was not oppressive because a good faith dispute existed whether the 1988 surgery was related to the 1981 accident. Further, Farm Bureau urges at most its conduct was negligent or the result of some honest error.

■■ Punitive damages must be supported by clear and convincing evidence. They are recoverable only upon evidence the defendant acted with malice, fraud, gross negligence or oppression which did not result from mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other human failing. *Spinsky v. Kay* (1990), Ind.App., 550 N.E.2d 349, 354, *reh. denied, trans. denied.* In addressing the issue of sufficiency of evidence, we will affirm a judgment for punitive damages if, considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137. Punitive damages are not compensatory in nature but are designed to punish the wrongdoer and deter similar conduct in the future. *Orkin Exterminating Company, Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1022.

■■■ An insurer breaches its duty to deal with its insured in good faith when it fails to settle a claim that could not in good faith be disputed. *Liberty Mut. Ins. Co. v.* *Parkinson, supra,* at 164. Punitive damages will not be upheld if there existed reasonable grounds to question liability. *Nationwide Mutual Ins. Co. v. Neville* (1982), 434 N.E.2d 585, 595–596. Farm Bureau's collective acts discussed previously constitute substantial evidence of probative value which supports the trial court's punitive damages award.

■■ Farm Bureau next argues punitive damages violate due process rights under the Fourteenth Amendment of the United States Constitution because they allow standardless discretion to determine the severity of punishment. We disagree.

*Pacific Mutual Life Ins. Co. v. Haslip* (1991), —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1, upheld a punitive damages award which was more than four times the amount of compensatory damages. The action involved fraud of a health insurance agent who misappropriated premiums. The United States Supreme Court opined the common law method for assessing punitive damages does not itself violate due process. The method was well established before the Fourteenth Amendment was enacted, and nothing in the amendment's text or history indicates an intention to overturn it. *Id.,* at ——, 111 S.Ct. at 1042–1044. The insurance company there alleged the jury instructions given invited unlimited discretion. The Supreme Court said the punitive damages instructions in that case stated such damages were not compulsory and confined them to deterrence and retribution, gave no more discretion than was necessary to determine such things as "the best interests of the child," or "reasonable care," or "due diligence." *Id.,* at ——, 111 S.Ct. at 1044.

Similarly, we find no violation of due process in the assessment of punitive damages in the instant case. The court took into consideration the character and the degree of wrong as shown by the evidence and the necessity of preventing similar wrong.

■ Farm Bureau also asserts the equal protection clause of the Fourteenth Amendment was violated. Farm Bureau cites *Williams v. Illinois* (1970), 399 U.S.

235, 90 S.Ct. 2018, 26 L.Ed.2d 586, as holding the equal protection clause of the Fourteenth Amendment is violated if the economic status of the party is considered as a factor in the punishment.

Farm Bureau misstates the case. *Williams* merely held inability to pay court costs could not justify imprisoning an indigent beyond the maximum statutory term. *Id.*, 90 S.Ct. at 2024. There is no equal protection requirement to impose identical awards on all persons. Even though the amount awarded was higher against Farm Bureau than it may have been against a private individual, the trial court did not err in the punitive damage award.

Farm Bureau contends the award of attorney fees was erroneous. It urges there was no basis for the award and no evidence presented of the breakdown of attorney fees. We disagree.

In Indiana, the general rule requires each party to the litigation to pay his own attorney fees. Thus, attorney fees are not allowable in the absence of a statute or some agreement or stipulation authorizing such an award. *Kikkert v. Krumm* (1985), Ind., 474 N.E.2d 503, 504–505. Such a statute currently exists in this state.

IND.CODE 34–1–32–1 allows for the award of attorney fees and costs under certain circumstances. That statute provides:

> Sec. 1(a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

> (b) In any civil action, the court may award attorney's fees as part of the costs to the prevailing party, if it finds that either party:

> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

> (3) litigated the action in bad faith.

Thus, upon a finding of any of these elements, a court may award attorney's fees as part of the cost to the prevailing party.

*In re Marriage of Duke* (1990), Ind.App., 552 N.E.2d 504, 506.

■■■ A claim is frivolous within the meaning of this section if (a) it is taken primarily for the purpose of harassing or maliciously injuring a person, (b) if the lawyer is unable to make a good faith and rational argument on the merits of the action, or (c) unable to support the action taken by a good faith and rational argument for an extension, modification or reversal of existing law. A claim or defense is unreasonable if based on the totality of the circumstances, including the law and facts known at the time of filing, no reasonable attorney would consider the claim or defense worthy of litigation or justified. A claim or defense is groundless within the meaning of this section if no facts exist which support the legal claim relied on and presented by the losing party. *Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, 170–171, adopted 543 N.E.2d 627, 629.

■■ Attorney fees were appropriately assessed against Farm Bureau under IC 34–1–32–1(b)(2). We believe it clear from the record Farm Bureau continued its defense when no facts existed to support its defense claim Ira's expenses were not related to the accident after it received Dr. Jelsma's December letter. The only document which questioned causation was the Advisory Report which Farm Bureau never had substantiated with additional records but it continued to resist payment. It is clear from the record Farm Bureau did not promptly and fairly determine the validity of this claim. It doggedly pursued its defense even after it had proof to the contrary and no substantial evidence supporting its position.

We further note Farm Bureau did not object to the introduction of evidence of attorney fees on the trial level.

The trial court in its order awarding attorney fees in the motion to correct errors stated that attorney fees are recoverable for indirect contempt of court citing I.C. 34–4–7–3, *Thomas v. Woollen* (1971), 255 Ind. 612, 266 N.E.2d 20. I.C. 34–4–7–3 does not mention attorney fees. Attorney

fees were awarded in *Thomas* because a party had violated an injunction and IC 34-i-10-11 provides for attorney fees in an action to enforce an injunction.

 However, we will affirm a trial court's judgment if the right result was reached but for the wrong reasons. Thus, the trial court's award of attorney fees was proper. Farm Bureau's continued defense fell within the parameters of IC 34-1-32-1(b)(2), as noted above.

 Finally, we assess additional damages against Farm Bureau and in favor of appellee Ira in the amount of 10% of the gross amount of the trial court's judgment under the authority of App.Rule 15(G). For this purpose, the term "gross amount of the judgment" shall include the following:

(1) the amount of the judgment attributable to

(a) compensatory damages,

(b) punitive damages, and

(c) pre-judgment interest.

Costs to appellant.

Affirmed.

MILLER and BUCHANAN, JJ., concur.