**Willard L. WEIDMAN, Appellant–Plaintiff,**

v.

**ERIE INSURANCE GROUP, Appellee–Defendant.**

**No. 20A03–0010–CV–379.**

Court of Appeals of Indiana.

April 6, 2001.

Donald E. Wertheimer, South Bend, IN, Attorney for Appellant.

John R. Gastineau, Eberhard & Gastineau, LaGrange, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Willard L. Weidman appeals the trial court's denial of his motion for summary judgment against Defendant-appellee, Erie Insurance Group (Erie). Specifically, Weidman claims that the trial court erred in denying his summary judgment motion: 1) on his claim for the structural and dwelling damage to his property under the insurance contract between Erie and Weidman; and 2) on his claim for reasonable attorney fees and punitive damages for Erie's alleged breach of its duty of good faith.

### FACTS

The facts most favorable to the nonmovant indicate that Weidman purchased an insurance policy from Erie for his residential property located in Bristol, Indiana. The policy was in effect for the period December 17, 1997, to December 17, 1998.

Weidman's policy provided for structural damage claims to be settled on a replacement cost basis. The policy's loss settlement provision pertaining to dwelling coverage provides:

8. **LOSS SETTLEMENT**

2. Under *Dwelling Coverage* loss will be settled on a replacement cost basis, without deduction for depreciation. Payment will not exceed the smallest of the following amounts:

—the replacement cost of that part of the dwelling damaged for equivalent construction and use on the same premises;

—the amount actually and necessarily spent to repair or replace the damaged dwelling.

ALL OTHER POLICY PROVISIONS APPLY.

R. at 143 (emphasis in original). Further, when settlement is made on a replacement cost basis, the policy provides, "**We** will pay no more than the actual cash value of the damage until the actual repair or replacement is completed." R. at 156 (emphasis in original).

In the alternative, the policy permits the insured to "disregard the replacement cost provision and make claim for loss or damage to buildings on an actual cash value basis."R. at 156. The loss settlement provision regarding "actual cash value" settlements provides that:

The actual cash value will be determined at the time of the loss. Payment will not exceed the amount necessary to repair or replace the damaged property.

R. at 156. Regardless of whether the insured opts for a replacement cost or actual cash value settlement, the policy provides that each party may select its own appraiser in the event that there is a dispute between the insurer and the insured over the amount of a loss. According to the appraisal provision:

The appraisers shall then set the amount of loss. If the appraisers submit a written report of an agreement to [Erie], the amount agreed upon shall be the amount of the loss. If they cannot agree, they will submit their differences to the umpire.

R. at 155. The loss payment provision then provides that:

7. **LOSS PAYMENT**

We will settle any claim for loss with you ... within 30 days after we receive your proof of loss and the amount of loss is finally determined by one of the following:

. . . .

c. there is a filing of an appraisal award on your behalf.

R. at 155–56.

On January 27, 1998, Weidman's residence was substantially destroyed by fire. On February 1, 1998, Weidman hired Midwest Public Adjusting, Inc. (Midwest) to represent him in his claim to Erie. After Weidman submitted his claim for benefits to Erie, the parties could not agree on the extent of the loss to the dwelling and other structures. Accordingly, pursuant to the policy, each party chose an appraiser to assess the loss. The parties' appraisers subsequently signed an Appraisal Agreement and Award in which they agreed that the "replacement cost" and the "actual cash value" was $113,510.92.[1] R. at 15.

---

**1.** The policy defines a replacement cost settlement as a settlement in which Erie "would not deduct for depreciation." R. at 156. In contrast, the policy states that settlement on an actual cash basis "means that [Erie] will deduct for depreciation." R. at 156. Because the addition to the residence where the fire started was new and the entire house had been remodeled, the appraisers agreed that there was no applicable depreciation. R. at

During its discussions with Midwest over the amount of Weidman's loss, Erie became aware that Weidman was contemplating doing the repair work himself, rather than hiring a general contractor. Thereafter, on June 19, 1998, Erie tendered a check in payment for fire damage repairs of $90,808.74, representing eighty percent of the amount of the appraisal award. Erie withheld twenty-percent of the appraisal amount for the contractor's overhead and profit that Weidman would not expend in doing the work himself. Shortly thereafter, on June 25, 1998, Midwest requested payment by Erie of the balance of the appraisal award. In response, on July 6, 1998, Erie sent Midwest a letter stating that "once repairs to the structure are completed [it] would be happy to issue a check for the remaining profit and overhead." R. at 324. Erie sent Midwest another letter, on October 6, 1998, stating that it was "unable to make any more payments on the structure until all repairs are complete and you are ready to settle." R. at 93.

On November 4, 1998, Weidman filed a complaint against Erie alleging breach of contract, and seeking compensatory damages of $22,702.18, representing the twenty-percent of the appraisal award withheld by Erie. Weidman's complaint also sought punitive damages, reasonable attorney fees, and prejudgment interest and costs. On February 23, 1999, Weidman filed a motion for summary judgment, seeking payment of his claim under the replacement cost provisions of the policy. In his motion, Weidman claimed that there were no disputed issues of material fact regarding Erie's breach of contract and its duty to settle the claim in good faith. Erie responded by filing its own motion for

summary judgment on June 10, 1999, in which it claimed that it had performed pursuant to the clear language of the contract and without the culpable state of mind necessary to sustain a claim of breach of duty to act in good faith. In the meantime, Weidman refused Erie's requests for substantiation of the amounts actually spent to make repairs or replacements to the damaged premises. On October 5, 1999, the trial court denied both motions on the grounds that there existed issues of material fact regarding the actual costs of repair to Weidman's premises, because Weidman had failed to identify those costs. Subsequently, on November 29, 1999, Weidman filed a renewed and revised motion for summary judgment, seeking, this time, to obtain payment of his claim on an actual cash value basis. On April 18, 2000, the trial court denied Weidman's motion, and incorporated its October 5, 1999 ruling into its opinion. Weidman now appeals.

### DISCUSSION AND DECISION
#### I. Standard of Review

The standard of review of a summary judgment is well settled. This court applies the same standard as the trial court. *USA Life One Ins. Co. v. Nuckolls,* 682 N.E.2d 534, 537 (Ind.1997). We do not weigh the evidence designated by the parties. Instead, we liberally construe the evidence in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate only if the pleadings and the evidence show both the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Butler v. City of Indianapolis,* 668 N.E.2d 1227, 1228 (Ind.1996). Where material

262–63. Thus, in this instance the replacement cost and the actual cash value were the same amount.

facts conflict, or undisputed facts lead to conflicting material inferences, summary judgment is inappropriate. *Butler,* 668 N.E.2d at 1228.

## II. Weidman's Claims

Weidman contends that the trial court erred in denying his summary judgment motion on his claim for the structural losses to his property under his insurance contract with Erie, and on his claim for punitive damages and attorney fees with respect to Erie's alleged breach of its duty of good faith. Specifically, Weidman asserts that the trial court erred as a matter of law in holding that: 1) the Appraisal Agreement and Award determined the amount of his loss, but not the extent of Erie's liability for that loss; 2) the insurance policy provides for Erie to withhold a portion of the amount of loss determined by the appraisal until Weidman substantiates his expenditure to repair the damaged property; and 3) there is a disputed issue of material fact as to whether Erie breached the contract and acted in bad faith, thereby precluding summary judgment and an award of attorney fees, punitive damages, and prejudgment interest.

 In addressing Weidman's claims we note that contracts of insurance are subject to the same rules of construction as are other contracts. *Ramirez v. Am. Family Mut. Ins. Co.,* 652 N.E.2d 511, 514 (Ind.Ct.App.1995). Construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Id.* Summary judgment based upon an insurance contract is a legal determination that the contract is unambiguous and that the rules of contract construction need not be employed to ascertain the contract's meaning. *Id.* An unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. *Id.* An insur-

ance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms. *Id.* Ambiguity is not established by the mere existence of a controversy or by the parties' differing interpretations of the contract terms. *Id.*

 We also note that an insurance contract must be construed as a whole. *Pennington v. Am. Family Ins. Group,* 626 N.E.2d 461, 464 (Ind.Ct.App.1993). Construction of the contract as a whole requires reading beyond isolated phrases, and unclear terms can be clarified by reading the entire contract. *Id.* However, where a policy contains inconsistent and contradictory provisions, that provision most favorable to the insured will be adopted. *Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.,* 638 N.E.2d 847, 852 (Ind.Ct.App.1994).

### A. Amount of Erie's Liability

 Weidman first claims that the trial court erred in holding that the Appraisal Agreement and Award determined the amount of his loss as a result of the fire, but not Erie's liability for that loss. Weidman points to the appraisal provision of the policy which states that the appraisers will "set the amount of loss," R. at 155, and the loss payment provision, which states that "[Erie] will pay within 30 days after … receiv[ing] your proof of loss and the amount of loss is finally determined by … filing of an appraisal award on your behalf." R. at 155–56. Thus, Weidman asserts that according to the clear terms of the policy's appraisal and loss payment provisions, the amount of the appraisal award became the amount of the loss that Erie was obligated to pay.

However, while the appraisal provision states that the appraisal shall set "the amount of the loss," it contains no language designating this figure as the

amount of Erie's liability. Rather, the extent of Erie's liability is set forth in the loss settlement section of the policy, which clearly provides that *"Dwelling Coverage* loss will be settled on a replacement cost basis, without deduction for depreciation," and that "[p]ayment will not exceed the smallest of the replacement cost of that part of the dwelling damaged ... [or] the amount actually and necessarily spent to repair or replace the damaged dwelling." R. at 144 (emphasis in original). Thus, where the insured seeks payment of his claim under the replacement cost provisions of the policy, the appraisal provision determines the amount of the loss, but it is the loss settlement provision that determines the extent of Erie's liability with respect to that loss.

Even when the insured seeks payment of his claim under the actual cash value provisions of the policy, the appraisal provision does not determine the amount of Erie's liability. Specifically, the actual cash value settlement option provides that "actual cash value will be determined at the time of loss," R. at 156, and the loss payment provision states that the "amount of loss is finally determined by ... the filing of an appraisal award." R. at 155–56. However, Erie's liability is determined and capped by the clause providing that "[p]ayment will not exceed the amount *necessary* to repair or replace the damaged property" R. at 156 (emphasis added). Therefore, we must conclude that the Appraisal Amount and Award determine the amount of Weidman's loss only, and other provisions in the policy govern the extent of Erie's liability for that loss. Thus, the trial court did not err.

### B. Withholding of a Portion of the Appraisal and Award

▮▮ Weidman next claims that the trial court erred in determining that Erie is entitled to withhold a portion of the amount of loss determined by the Award until he submits proof of the actual costs incurred. Where the settlement is made on a replacement cost basis, the policy provides that Erie "will pay no more than the *actual cash value* of the damage until the actual repair or replacement is completed." R. at 156 (emphasis added). According to Weidman, the appraisal set the "actual cash value" of his loss at $113,510.92, and, therefore, he is entitled to payment of this entire amount without being required to show proof of his expenditures in repairing or replacing the damaged structures.

▮ Our review of the provisions of the policy reveal no language authorizing Erie to withhold twenty percent for contractor's overhead or profit. Moreover, we agree with Weidman that the actual cash value of the loss was set by the appraisal. However, because the plain language of the policy distinguishes between the amount of loss and Erie's liability for that loss, it was appropriate for the trial court to deny Weidman's motion for summary judgment. Specifically, the policy's loss settlement provision dealing with replacement cost limits Erie's liability to the smallest of the replacement cost or "the amount actually and necessarily spent to repair or replace the damaged dwelling." R. at 144. Similarly, there is a limit on the amount that Erie must pay under the actual cash value provision, as that portion of the policy states that "[p]ayment will not exceed the amount *necessary* to repair or replace the damaged property." (emphasis added). R. at 156. Therefore, before a settlement can be reached under either the replacement cost or actual cash value provisions of the policy, Weidman must prove what he expended, including his own labor and costs, and that those expenses were necessary. As Weidman has not provided proof with respect to these expenditures,

and they are an issue of fact, the trial court properly denied his motion for summary judgment.

### C. Breach of Duty of Good Faith

■ Finally, Weidman claims that Erie's refusal to pay his claim was a tortious breach of its duty of good faith. Specifically, Weidman argues that "the evidence is such that a trier of fact could find by clear and convincing evidence that Erie's conduct constitutes malice, gross negligence, and oppressiveness, which justifies an award of punitive damages" under Ind.Code § 34–51–3–4,[2] and reasonable attorney fees. Appellant's brief at 9.

■ The obligation of good faith and fair dealing with respect to the discharge of an insurer's contractual obligation includes the obligation to refrain from, among other things, making an unfounded refusal to pay policy proceeds, and causing an unfounded delay in making payment. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind.1993). The insurer's duty is breached when there is no "rational or principled basis" for its actions. *Id.* Evidence of an insurer's breach of its duty of good faith toward its insured may support an award of punitive damages. *United Farm Bureau Mut. Ins. Co. v. Ira*, 577 N.E.2d 588, 596 (Ind.Ct. App.1991), *trans. denied.* However, for punitive damages to be awarded, the insured must establish by clear and convincing evidence that the insurer acted with malice, fraud, gross negligence, or oppressiveness, which was not the result of mistake of fact or law, honest error of judgment, over-zealousness, mere negligence, or other human failing. *Id.* Moreover, "a good faith dispute about the amount of a valid claim or about whether the insured

has a valid claim at all will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith." *Hickman,* 622 N.E.2d at 520. (citations omitted).

Further, Ind.Code § 34–52–1–1 provides that in a civil action a court may award attorney fees to the prevailing party, if the court find that the other party either: (1) brought the action or defense on a claim or defense that is frivolous, unreasonable or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable or groundless; or (3) litigated the action in bad faith.

Here, Erie supports its argument regarding the extent of its liability and its decision to withhold a portion of the appraisal award until Weidman submits proof of his expenditures, on, among other things, the plain language of the policy and legal precedent in other jurisdictions. Inasmuch as we have already determined that there is a rational basis for Erie's actions, and Erie supports its position with good faith legal argument, Weidman has failed to establish by clear and convincing evidence that Erie breached its duty to act in good faith as a matter of law. Moreover, Weidman has not shown, for summary judgment purposes, that Erie's argument is frivolous, unreasonable or groundless, warranting an award of reasonable attorney fees. In sum, issues of fact as to whether Erie breached its contract with Weidman and acted in bad faith preclude summary judgment in favor of Weidman.

### III. CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial

---

**2.** I.C. § 34–51–3–4 sets the maximum award of damages, and provides that a "punitive damage award may not be more than the greater of: (1) three (3) times the amount of compensatory damages awarded in the action; or (2) fifty thousand dollars ($50,000)."

court did not err in holding that: 1) the Appraisal Agreement and Award determined the amount of Weidman's loss, but not the extent of Erie's liability for that loss; 2) the insurance policy does not entitle Erie to withhold a portion of the appraisal award amount for contractor's overhead and profit because Weidman is making the repairs himself, but that Erie is nevertheless permitted to require Weidman to provide proof of his expenditures, and the necessity of same, before tendering further payment; and 3) there is a disputed issue of material fact as to whether Erie breached the contract and acted in bad faith, which might entitle Weidman to recover attorney fees, punitive damages, and prejudgment interest on his claim.

Judgment affirmed and remanded for further proceedings consistent with this opinion.

BROOK and BARNES, JJ., concur.