INDIANA REVENUE BOARD et al.,
Appellants (Defendants below),

v.

STATE of Indiana ex rel. the BOARD OF
COMMISSIONERS OF the COUNTY
OF HENDRICKS, a body corporate and
politic, on behalf of itself and all Boards
of Commissioners of Counties in the
State of Indiana which are similarly sit-
uated, Appellees (Plaintiffs below).

No. 279S54.

Supreme Court of Indiana.

Feb. 22, 1979.

Theo. L. Sendak, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellants.

Ronald S. Lieber, Lieber & Neff, Indianapolis, E. Alonzo Deckard, Lind, Deckard & O'Brien, Danville, Howard E. Petersen and Richard K. Muntz, LaGrange, for appellees.

ON PETITION TO TRANSFER

HUNTER, Justice.

■ This cause is before us on a Petition to Transfer. Upon motion by the state, the Indiana Revenue Board's appeal to the Second District, Indiana Court of Appeals, was dismissed due to the Indiana Revenue Board's failure to file a second motion to correct errors after the trial court amended the amount of its judgment. Pursuant to our holding in *P–M Gas & Wash Co., Inc. v. Smith,* (1978) Ind., 375 N.E.2d 592, no second motion to correct errors was needed as the same justiciable issues were completely expressed within the original motion. The dismissal by the Court of Appeals is now vacated, transfer is granted, and the issues are before us on their merits.

Two issues are presented:

1. Does interest lie on a judgment of mandate?

2. Did the trial court err in assessing the amount of any interest owed?

The facts giving rise to this controversy are fairly complex.

*Past Litigation*

The 1967 Indiana State General Assembly passed House Bill 1818 shortly before the end of the legislative session. This bill provided that ninety percent of the inheritance taxes collected in each county be paid to the county, and the other ten percent be paid to the State of Indiana. House Bill 1818 was, in effect, "pocket-vetoed" by the governor. The bill provided that in counties with Mass Transportation Authorities (only Marion County), the ninety percent should go to the Mass Transportation Authority; the Mass Transportation Authority of Indianapolis brought suit to have the pocket veto declared unconstitutional.

On July 20, 1967, an action for mandate and injunction was filed in Room No. 3, Superior Court of Marion County, asking the Court to find the "pocket-veto" unconstitutional and asking the court to mandate various state officials to administer and enforce House Bill 1818. The Indiana Attorney General filed a petition for removal under the provisions of Ind.Code § 34–4–18 (Burns 1973), which allowed the Attorney General to remove cases which had statewide public significance from a lower court to the Indiana Court of Appeals.

On or about December 28, 1968, the Indiana Court of Appeals ruled that the "pocket-veto" in this case was unconstitutional, and that House Bill 1818 was the law, and that the state would have to pay the Mass Transportation Authority of Indianapolis the inheritance tax money withheld from it since the effective date of the Act. *See State ex rel. Mass Transp. Auth. v. Indiana Rev. Bd.,* (1968) 144 Ind.App. 63, 242 N.E.2d 642. In January, 1969, the Indiana State General Assembly met, introduced, and passed bills repealing each of the pocket-vetoed bills which had been resurrected as a result of the decision of the Indiana Court of Appeals, making the repealers retroactive to the date that they took effect. The Indiana Court of Appeals found, on rehearing, that the court order of judgment should be enforced despite the repeal on the theory that the separation of powers doctrine prohibited the legislature from wiping out a judgment of a court. *See State ex rel. Mass. Transp. Auth. v. Indiana Rev. Bd.,* (1968) 144 Ind.App. 63, 253 N.E.2d 725. The state auditor obeyed the order and paid the Mass Transportation Authority of Indianapolis the sum due it.

A class action was begun on October 29, 1969, in Room No. 3, Marion Superior Court, in the name of the County of Elkhart on behalf of itself and all other counties similarly situated to collect their share of the inheritance tax funds. The Indiana Revenue Board filed a motion to dismiss claiming that the suit was a suit against the state, and an action for a money judgment and, as such, was covered by the defense of sovereign immunity.

The case had been venued to the Shelby County Circuit Court, and the judge there overruled the motion to dismiss. A motion for summary judgment was filed by the State of Indiana on the relation of the counties, and it was granted. On October 26, 1970, a judgment was entered on behalf of the ninety-one counties for $16,555,-787.95. The Indiana State General Assembly then passed Acts of 1971, Public Law 66 (Ind.Code §§ 6–4–1–35.5 and 6–4–1–35.6) which stated:

"All funds appropriated in Section 35.5 [6–4–1–35.5] of this chapter shall be used to satisfy the judgment rendered October 26, 1970, [by] the Circuit Court of Shelby County, Indiana, in Cause No. cc 70–241, the caption of which cause is: * * * [omitting caption] which funds shall be dispersed in accordance with the terms of said judgment.

"Immediately upon this act becoming effective [June 1, 1971] the Auditor of the State of Indiana is authorized and directed to issue a warrant of the State of Indiana to the Clerk of the Shelby Circuit Court in the amount appropriated in Section 1 [6–4–1–35.5] of this Act and satisfy the judgment referred to in said section."

No amount of money was specified in the statute, although the exact amount of the judgment was known by the legislature, and the warrant was to be issued in one sum to the Clerk of Shelby County rather than separately to the general funds of each county. The Indiana Revenue Board had commenced an appeal from the judgment; the appeal was dismissed in light of the legislation.

The amount ($16,555,787.95) was paid into the Clerk of Shelby County on June 7, 1971, and subsequently was distributed to each of the counties by the Shelby County Clerk pursuant to figures supplied to them by the Circuit Court of Shelby County as a result of computations prepared by the attorneys for the ninety-one counties. The judgment was never marked satisfied of record.

*Present Litigation*

On November 12, 1971, the state, on behalf of Hendricks County and all other counties similarly situated, filed a suit in the Superior Court of Marion County requesting that interest on the $16,555,787.95 judgment be paid at the rate of six percent from October 26, 1970, to June 7, 1971. The Indiana Revenue Board moved to dismiss the suit setting up the defense of sovereign immunity based upon the fact that the action was against the State of Indiana and was an action for a money judgment. Alternatively, the Indiana Revenue Board argued that the previous suit (which had resulted in the judgment) had been a mandate action, and that interest is not due on mandate judgments.

The motion to dismiss was overruled, the Indiana Revenue Board filed an answer in general denial, and trial was held. The Superior Court of Marion County, Room No. 3, on June 18, 1976, found in favor of the counties and assessed interest on the basis of Ind.Code § 24–5A–1–1 (Burns 1974).[1] After the Indiana Revenue Board filed a motion to correct errors, the trial court amended the judgment on September

1. "24–5A–1–1 *. Judgments for money—Interest on.—Interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until the same is satisfied at the rate agreed upon on the original contract sued upon but shall not exceed eight per cent [8%] per annum even though a higher rate of interest may prop-erly have been charged pursuant to contract prior to judgment, and if there be no contract by the parties, then at the rate of eight per cent [8%] per annum.

" * Compiler's Notes. This section has not been incorporated into the Indiana Code and the chapter and section numbers have been assigned by the compiler."

30, 1976, and based the computation of interest on Ind.Code § 34–2–22–1 (Burns 1973).[2] The Indiana Revenue Board, without filing a second motion to correct errors, appealed. Having determined that a second motion to correct errors was unnecessary, we now grant transfer from the Court of Appeals and address the issues upon their merits.

### I.

The Indiana Revenue Board first argues that the trial court's decision to award the ninety-one counties $16,555,-787.95 was merely a judgment for mandate and that therefore no interest could properly be assessed. The Indiana Revenue Board failed to cite any authority for this proposition. It is true that the legal action was *for mandate,* but that format was dictated by the Indiana statutes which provided that actions to compel the performance of a duty resulting from office, trust, or station should be known as actions for mandate. *See* Ind.Code §§ 34–1–58–1 and 34–1–58–2 (Burns 1973). The mandate itself is meant to accomplish what cannot otherwise be accomplished through ordinary legal or equitable remedies. Here, the State Revenue Board was mandated to pay the amount of money due to the counties in a lump sum to the Clerk of the Shelby Circuit Court. The mandate judgment, then, was also *effectively* a money judgment. The *result* is the same. *See, e. g., Rice v. State ex rel. Drapier,* (1884) 95 Ind. 33; *State ex rel. McGregor v. Cooprider,* (1884) 96 Ind. 279; *Ingerman v. State ex rel. Conroy,* (1891) 128 Ind. 225, 27 N.E. 499.

### II.

The ultimate question to be decided by this appeal regards the computation of interest on the money judgment. The applicable statute is Ind.Code § 34–2–22–1 (Burns 1973):

"34–2–22–1. Claims and judgments against state—Interest—Exception.—In actions or proceedings in which the state or any board, commission, agency or official is authorized by law to sue or be sued and in which a money judgment is authorized by law to be entered and to be paid out of state funds in the custody of the state or in the custody of any such board, commission, agency or official, interest shall attach to any such final judgment so entered at the rate of six per centum [6%] per annum beginning with the forty-fifth [45th] day after the rendition thereof and not otherwise . . . .."

Certain facts are undisputed by the parties:

1. A judgment was entered in the Shelby County Circuit Court in the amount of $16,555,787.95 on October 26, 1970;
2. The Indiana General Assembly enacted legislation specifically authorizing the *satisfaction* of said judgment;
3. The $16,555,787.95 was paid to the Clerk of Shelby County on June 7, 1971;
4. The judgment was never marked satisfied of record.

Since a permissible suit was maintained against a board of the state and since a money judgment was authorized by law to be paid, it is axiomatic that interest attached pursuant to the language within Ind. Code § 34–2–22–1 (Burns 1973). The forty-

2. "34–2–22–1. Claims and judgments against state—Interest—Exception.—In actions or proceedings in which the state or any board, commission, agency or official is authorized by law to sue or be sued and in which a money judgment is authorized by law to be entered and to be paid out of state funds in the custody of the state or in the custody of any such board, commission, agency or official, interest shall attach to any such final judgment so entered at the rate of six per centum [6%] per annum beginning with the forty-fifth [45th] day after

the rendition thereof and not otherwise: Provided, That this act [34–2–22–1, 34–2–22–2] shall not be construed to apply to judgments rendered against the state in actions or proceedings duly authorized to be brought against the state of Indiana in the Court of Claims for the payment of which no appropriation has been previously made; nor shall this act be construed as authorizing actions or proceedings against the state or any agency of the state."

fifth (45th) day after the rendition of the judgment was December 10, 1970. Between December 10, 1970, and June 7, 1971, interest accrued on the $16,555,787.95 judgment at a rate of six percent (6%) per annum. That interest should have been paid, as the trial court correctly concluded. The interest on the $16,555,787.95 judgment was authorized within the appropriation made by the legislature, which appropriation was effective on June 1, 1971. Once the interest on the $16,555,787.95 judgment is paid into the Clerk of the Shelby Circuit Court, the $16,555,787.95 judgment should be marked satisfied of record.

### III.

■ One ancillary effect of this litigation must be set out separately. The Indiana Revenue Board should have paid the interest into court on the $16,555,787.95 judgment at the same time it paid the judgment itself. By delaying and refusing, the Indiana Revenue Board forced the State of Indiana, on behalf of the ninety-nine counties, to sue separately for the interest. As we have discussed, that suit resulted in a final judgment in the Marion Superior Court, Room No. 3, on September 30, 1976. The final judgment was for the amount of interest which had accrued pursuant to Ind. Code § 34–2–22–1 (Burns 1973). *That* final judgment, then (rendered in the Superior Court of Marion County), was subject to the accrual of interest pursuant to Ind.Code § 34–4–16–6 (Burns 1973):

"34–4–16–6. No execution—Appropriation.—Whenever by final decree or judgment of said superior court of Marion County, Indiana, or the Supreme Court, a sum of money is adjudged to be due any person from the state of Indiana, no execution shall issue thereon, but said judgment shall draw interest at the rate of six per cent [6%] per annum from the date of the adjournment of the next ensuing session of the general assembly until an appropriation shall have been made by law for the payment of the same and said judgment paid."

When the General Assembly adjourned in 1977 (which was the next ensuing session after the September 30, 1976, final judgment), interest began accruing at the rate of six percent [6%] per annum on the *interest* owed on the $16,555,787.95 judgment. Since the General Assembly in 1971 made an appropriation for the satisfaction of the Shelby Circuit Court judgment (which judgment was to be statutorily enhanced by interest), it is unnecessary for the General Assembly to again appropriate merely because the State Revenue Board was dilatory in paying the interest owed on the original judgment. Interest which has accrued on the unpaid interest judgment from the date of the adjournment of the 1977 General Assembly therefore stops accruing as of the date that *all* interest is paid (as no further legal appropriation is needed).

We affirm the trial court's decision and remand to that court for: (1) computation of the amount of interest which accrued from December 10, 1970, to June 7, 1971, on the $16,555,787.95 judgment; (2) an order directing the State Revenue Board to pay the interest owed to the Clerk of the Shelby Circuit Court; (3) an order directing the Clerk of the Shelby Circuit Court to mark the $16,555,787.95 judgment satisfied of record and to disburse the interest to the ninety-one counties proportionally; (4) computation of the amount of interest which accrued on the interest from the date of the adjournment of the 1977 General Assembly to the date all interest is paid; (5) an order directing the State Revenue Board to pay that interest to the Clerk of the Shelby Circuit Court; (6) an order directing the Clerk of the Marion County Courts to mark the Marion Superior Court interest judgment satisfied of record; and (7) an order directing the Clerk of the Shelby Circuit Court to disburse the interest on the interest to the ninety-one counties proportionally.

For all of the foregoing reasons, there was no trial court error, and the judgment of the trial court should be affirmed.

Transfer is granted, case remanded with instructions and affirmed.

DeBRULER, PRENTICE and PIVAR-NIK, JJ., concur.

GIVAN, C. J., not participating.