Jo C. PAXTON, Appellant–Respondent,

v.

Millicent H. PAXTON (now Horn), Appellee–Petitioner.

No. 43A04–9809–CV–439.

Court of Appeals of Indiana.

April 21, 1999.

David W. Stone IV, Anderson, Indiana, Joanne M. Kolbe, Warsaw, Indiana, Attorneys for Appellant.

Millicent H. (Paxton) Horn, Winona Lake, Indiana, Appellee Pro Se.

## OPINION

KIRSCH, Judge

Appellant–Respondent Jo C. Paxton ("Husband") appeals from the trial court's Order of Transfer directing that post-judgment interest be drawn at the statutory rate of eight percent until satisfaction of the $19,940.00 adjusting payment in Husband's favor from an IRA account owned by Millicent H. Paxton (now Horn) ("Wife").

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On September 12, 1995, the Kosciusko Circuit Court entered a decree of dissolution of the marriage of Husband and Wife. Pursuant to the terms of such decree, the marital property was to be divided 55/45 with Wife receiving a greater portion of the net marital estate. To achieve this result, a Qualified Domestic Relations Order (QDRO) was to be issued in Husband's favor for the sum of $19,940.00 from the amount then existing in an IRA account owned by Wife on August 25, 1995.

■ Husband appealed the trial court's division of marital property, and we affirmed the court's decision in an unpublished opinion handed down April 14, 1997. Thereafter, the QDRO was entered on May 22, 1998. The parties later determined, however, that because the account in question was a self-directed individual retirement account as op- posed to an employee pension plan governed by ERISA, transfer of the adjusting payment from Wife to Husband could only be effectuated by an Order of Transfer rather than a QDRO.[1] The trial court consequently entered the Order of Transfer on August 10, 1998, providing in pertinent part as follows:

"....That pursuant to the decree of dissolution dated September 12, 1995, the Respondent, namely Jo C. Paxton, was originally awarded a money judgment of $19,940.00 to be paid from the City Securities Corporation account which was once known by account numbered 60–0157, and which account is now numbered 39384926. *That said judgment draws interest by law at 8% per annum until satisfied, which interest now amounts to $4,652.55, making the amount due to the Respondent the sum of $24,592.55. The sum of $24,592.55 is, therefore, ordered transferred to Respondent from account numbered 39384926....*"

*Record* at 61 (emphasis added). Husband now appeals.

## DECISION AND DISCUSSION

■ Husband contends that in the almost three years which passed between the trial court's decree of dissolution and the Order of Transfer, the $19,940.00 award was not segregated from Wife's other funds in the IRA account and thus grew at a rate of over sixteen percent. Accordingly, Husband argues that the court's application of the statutory interest rate of eight percent was an inadequate remedy in light of the money's actual growth of over twice that figure, and that Wife was allowed to profit unfairly from

1. Through ERISA, Congress established a detailed federal framework for the regulation of *employee* pension and welfare benefit plans. *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 303 (Ind.Ct.App.1998) (citing *Bennett v. Indiana Life and Health Ins. Guar. Ass'n*, 688 N.E.2d 171, 179 (Ind.Ct.App.1997), *trans. denied*); 29 U.S.C. § 1144(a). ERISA provides that alienation or assignment of the employee benefits under such plans is generally prohibited. *Id.*, 699 N.E.2d at 304 (citing 29 U.S.C. § 1056(d)(1)). In light of the difficulties this anti-alienation provision was causing in domestic relations settings where ERISA-governed pen- sions had to be divided, a limited exception was created in 1984 for state domestic relations orders that meet the requirements of a "qualified domestic relations order." *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 279 (7th Cir.1990), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990); 29 U.S.C. § 1056(d)(3)(A). A QDRO allows a plan participant to assign part of a pension plan in a divorce settlement. However, because the IRA in the instant appeal was a self-directed individual retirement account, an Order of Transfer was the proper mechanism to accomplish a division of the account as an asset of the marital estate.

the additional increase in Husband's share of the funds. We agree.

The trial court ordered interest paid on the $19,940.00 pursuant to IC 24–4.6–1–101 which provides:

"Except as otherwise provided by statute, *interest on judgments for money* whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at:

(1) the rate agreed upon in the original contract sued upon, which shall not exceed an annual rate of eight percent (8%) even though a higher rate of interest may properly have been charged according to the contract prior to judgment; or

(2) an annual rate of eight percent (8%) if there was no contract by the parties."

(emphasis added). By its terms, the statute applies only to judgments for money. A money judgment "adjudges the payment of a sum of money, as distinguished from one directing an act be done or property to be restored or transferred." BLACK'S LAW DICTIONARY 844 (6th ed.1990). Here, the $19,-940.00 allocated to Husband by the decree of dissolution was not a money judgment, but an order for transfer of property, namely the in-kind asset allocation of a portion of Wife's IRA account.

To accomplish the 55/45 split in marital property, the decree stated that Husband was to receive "the sum of $19,940.00 from the Cities [sic] Securities Account No. 66–0157 (in Wife's name) *from the amount in said account on August 25, 1995.*" *Record* at 14 (emphasis added). In other words, $19,940.00/$41,528.00 of the assets then existing in Wife's IRA account, or forty-eight percent, was to be distributed to Husband in order to effectuate the court's 55/45 division of the net marital estate.

The QDRO contemplated by the dissolution decree and later replaced by the Order of Transfer did not give Husband an immediate right to the $19,940.00, but a right to a portion of Wife's IRA subject to the restrictions imposed on the account, including penalties for early withdrawal. *See* I.R.C.

§ 72(t)(1). Any growth and any loss attributable to Husband's share of the IRA after August 25, 1995 inured to Husband, in lieu of post-judgment interest under IC 24–4.6–1–101. *See Irvine v. Irvine,* 685 N.E.2d 67, 71 (Ind.Ct.App.1997) (holding wife would benefit from appreciation in share of husband's pension awarded to her under a QDRO in lieu of interest, but that trial court did not err in awarding wife post-judgment interest on distribution consisting of cash). Because the allocation of Wife's IRA to Husband was not a money judgment, the trial court erred in awarding interest on such allocation. *Id.*

Moreover, the Order of Transfer permits Wife to profit unfairly from the over sixteen percent interest rate at which Husband's portion of her IRA account was growing compared to the eight percent interest she was actually ordered to pay. This windfall results in Wife receiving more than the dissolution decree allocated to her, and fails to divide the marital property "in a just and reasonable manner." *Waggoner v. Waggoner,* 531 N.E.2d 1188, 1189 (Ind.Ct.App.1988).

We therefore reverse and remand to the trial court with instructions to enter an Order of Transfer providing for the transfer in-kind of $19,940.00/$41,528.00 of the assets in Wife's IRA account as of August 25, 1995, together with all growth or loss in such account from August 25, 1995 to the date transfer is effected, to another self-directed individual retirement account bearing Husband's name.

Reversed and remanded for modification consistent with this opinion.

GARRARD, J., and NAJAM, J., concur.