**Timothy E. JACOBS, Appellant–Respondent,**

v.

**Bonita G. HILLIARD, in her capacity as Trustee of the H. David and Bonita G. Hilliard Living Trust, Appellee–Plaintiff.**

**No. 28A01–0404–CV–187.**

Court of Appeals of Indiana.

June 23, 2005.

---

George T. Patton, Jr., Peyton L. Berg, Bose, McKinney & Evans, LLP, Indianapolis, Jeffrey S. Nickloy, Campbell Kyle Proffitt, LLP, Noblesville, for Appellant.

Karl L. Mulvaney, Nana Quay–Smith, Bingham McHale, LLP, Indianapolis, for Amicus Curiae Association of Indiana Life Insurance Companies.

Stephen J. Peters, Bradley W. Skolnik, Stewart & Irwin, P.C., Indianapolis, Roger D. Erwin, Greenwood, for Appellee.

## OPINION

KIRSCH, Chief J.

Timothy E. Jacobs appeals the trial court's entry of partial summary judgment in favor of H. David Hilliard,[1] which required Jacobs to terminate the life insurance policies Jacobs then held on Hilliard's life. The dispositive issue is whether the trial court erred in requiring Jacobs to terminate the life insurance policies he

---

1. H. David Hilliard has passed away since the trial court's entry of judgment. Hilliard's wife has requested that the appeal be recaptioned with H. David's name replaced by Bo- nita G. Hilliard, in her capacity as Trustee of the H. David and Bonita G. Hilliard Living Trust.

held on Hilliard's life after the parties had dissolved their joint business.

We reverse and remand.[2]

## FACTS AND PROCEDURAL HISTORY[3]

Hilliard and Jacobs entered into business together in early 1997, when Hilliard agreed to contribute capital to Jacobs's company, Advance Marketing Technology, LLC ("AMT"). Jacobs and Hilliard each held a 50% ownership interest in AMT and were its only two members. As the company prospered, Jacobs and Hilliard decided to address the possibility of the unexpected death or disability of one of them. On September 17, 1999, they executed a cross purchase agreement, which required Jacobs and Hilliard to insure each other's lives in the amount of $200,000. Under the terms of the agreement, the insurance proceeds were to fund the buy out of the deceased's widow's or disabled member's shares.

As AMT became even more successful, Jacobs and Hilliard executed a subsequent cross purchase agreement (the "Cross Purchase Agreement") on April 23, 2001, which increased the amount of life insurance each partner carried on the other to two million dollars. Jacobs and Hilliard each obtained the additional policies and were both the owners and beneficiaries of those policies. AMT paid the premiums on these policies until the business was sold in 2002. Jacobs and Hilliard sold the business to Author Solutions, Inc., and executed a redemption and settlement agreement (the "Settlement Agreement") to resolve all outstanding claims and demands between the two. AMT was officially dissolved on November 15, 2002.

After dissolution, Hilliard proposed that he and Jacobs swap the life insurance policies they held on each other's lives. Jacobs declined the offer and continued to pay the premiums on the policies he held on Hillard's life. Hilliard stopped paying the premiums on the policies he held on Jacobs's life.

On January 13, 2003, Hilliard filed a Complaint for Declaratory Judgment and Conversion Damages in which he requested that the trial court either order Jacobs to convey the life insurance policies to him or cancel the life insurance policies Jacobs held on his life. On April 14, 2004, the trial court granted Hilliard's motion for partial summary judgment and ordered that Jacobs terminate the life insurance policies on Hilliard's life.

Jacobs filed an interlocutory appeal on April 26, 2004, and also moved to stay enforcement of the trial court's order that he terminate the policies. The trial court granted Jacobs's motion for a stay, and Hilliard objected. Hilliard requested that the trial court order Jacobs to change the beneficiary on the policies to the Clerk of the Greene County Circuit and Superior Courts (the "Clerk") and to physically transfer the policies to the Clerk. The trial court granted this request and ordered Jacobs to change the beneficiary on the policies and to deliver the policies to the court on June 21, 2004. Jacobs delivered the policies to the court on July 6, 2004. Hilliard passed away from ventricular fibrillation on July 22, 2004.

---

**2.** We hereby deny the Appellee's Motion for Leave to File Sur Reply Brief and the Appellee's Motion to Strike Portions of the Reply Brief of Appellant. We grant the Appellant's Motion for Leave to File Second Supplemental Appendix to Reply Brief of Appellant.

**3.** We held oral argument on this case on April 26, 2005. We commend counsel on the quality of their oral and written advocacy.

## DISCUSSION AND DECISION

On appeal, the standard of review for a summary judgment motion is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Amerisure, Inc. v. Wurster Constr. Co., Inc.,* 818 N.E.2d 998, 1001 (Ind.Ct.App.2004). The moving party bears the burden of designating sufficient evidence to eliminate any genuine factual issues, and once the moving party has fulfilled this requirement, the burden shifts to the nonmoving party to come forth with contrary evidence. *Amerisure, Inc.,* 818 N.E.2d at 1001. All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Id.*

■ Jacobs argues that the trial court erred in ordering him to terminate the life insurance policy he held on Hilliard's life because the language of the Cross Purchase Agreement does not dictate that the life insurance policies be terminated upon dissolution of the business. Sections 5 and 6 of the Cross Purchase Agreement specifically relate to the policies.

*Section 5.    Life Insurance.* Each of the Members has obtained a policy of life insurance on the life of the other Member in the face amount of Two Million Dollars ($2,000,000.00). Each of the Members shall maintain such life insurance in force throughout the duration of this agreement. Each policy is now and shall continue to be payable to the Member who owns and pays for such policy. At any time, but no more frequently than monthly, a Member may require the other Member to provide written evidence that the insurance policy owned and paid for by such other Member remains in force and that all premiums due thereon have been fully paid. If a Member shall fail to pay a premium when due the other Member may pay the premium on the policy insuring his life in order to keep such policy in force and thereafter collect the full amount of such premium, together with an administrative fee of ten percent (10%) of the premium paid from the Member who failed to make timely payment thereof. The life insurance policies described above, together with any additional policy or policies obtained by the members in support of their respective obligations under this agreement shall be listed on the attached schedule A.

*Section 6.    Disposition of Policies.* In the event that a Member should sell his units during his lifetime under the terms of AMT's Operating Agreement, or in the event of the death of a Member, the surviving or remaining Member shall have the option, exercisable within twenty (20) days of the date of such event, to purchase any life insurance policies on his life owned by the selling or deceased Member subject to this agreement. A Member shall give written notice of his intention to buy such policies to the other Member or to the personal representative of the deceased Member. The purchase price for any such policy shall be the cash value of such policy as of the date of purchase or One Hundred Dollars, whichever is greater. If the foregoing option is not exercised within said 20–day period, AMT shall have a similar option for an additional ten (10) day period. If neither the Member nor AMT exercises its option, the policy shall no longer be subject to this agreement.

*Appellant's Appendix* at 105–06.

■ When interpreting a written contract, our goal is to determine the intent of the parties at the time of execution as

revealed by the language they chose in expressing their rights and responsibilities. *Evans v. Med. and Prof'l Collection Serv., Inc.*, 741 N.E.2d 795, 797 (Ind.Ct.App.2001). Only when the meaning of a contract cannot be gleaned from the four corners of the instrument does the intention of the parties become a question of fact and resort to extrinsic evidence proper. *Id.* at 797–98. The test for determining if a contract is ambiguous is whether reasonable persons would find the agreement subject to more than one interpretation. *Id.* at 798.

Here, a close reading of the Cross Purchase Agreement reveals that it is not ambiguous. Hilliard sold his shares of AMT to Jacobs in anticipation of a sale of the business on October 14, 2002, pursuant to the Settlement Agreement signed by both parties. From the language in Section 6 above, when a member sells his units, the remaining member has the option to purchase the policy held on his own life within twenty days from the sale. Therefore, the only right triggered by Hilliard's sale was that Jacobs had the right to purchase the policy Hilliard held on his life before November 3, 2002 (20 days after the sale), and then AMT had the option of purchasing the policy on Jacobs's life before November 13, 2002 (10 days after Jacobs's right expired). Neither option was exercised leaving the policies as "no longer ... subject to this agreement." *Id.* at 106. Once the policies were "no longer ... subject to this agreement," it appears from the language of the Cross Purchase Agreement that the policies were merely no longer required to be maintained. We do not read this language as mandating that Jacobs should be required to terminate his life insurance policy held on Hilliard.

■ Hilliard maintains that the trial court was within its equitable powers when it ordered Jacobs to terminate his policy on Hilliard's life. We addressed similar facts in *Shriner v. Sheehan,* 773 N.E.2d 833 (Ind.Ct.App.2002). In *Shriner,* an employee and minority shareholder of an encyclopedia sales company was terminated. Prior to his termination, the company had purchased a life insurance policy worth five million dollars on the life of his partner, Sheehan, and had placed the policy in Shriner's name. The purpose of the policy was to fund the cross purchase agreement between the parties that covered the purchase of shares from a terminated shareholder. Upon Shriner's termination, the company ceased paying the premiums on the insurance policy on Sheehan's life. Shriner paid the premiums on the policy himself until the trial court ordered him to give up the policy, while granting him its cash surrender value. We upheld the trial court's ability to craft this remedy in equity stating, "While recognizing that the original purpose for the purchasing of the policy was frustrated, the trial court's remedy also honored Shriner's property interest in the policy by allowing him to keep the entire cash surrender value[, which] ... did not contradict any clear agreement between the parties." *Shriner,* 773 N.E.2d at 850.

Our case is to be distinguished. Unlike the agreement in *Shriner,* which did not specify what would happen to the policy if Shriner were involuntarily terminated, and therefore, was more appropriately addressed in equity, here, the Cross Purchase Agreement does set forth steps that may be taken when one member sells his shares of the company. Such a sale triggers certain rights for the remaining member with respect to the life insurance policy held by the selling member, but no similar rights for the selling member. Further, Jacobs's policy is a term life insurance policy with no cash surrender val-

ue, unlike the policy in *Shriner* that was a whole life policy with a surrender value. By requiring Jacobs to terminate his policy, we would be unable to honor Jacobs's property interest in the policy by granting Jacobs the right to compensation for surrendering the policy. Therefore, we conclude that the trial court erred in requiring Jacobs terminate his life insurance policy on Hilliard.

Reversed and remanded.

SULLIVAN, J., and VAIDIK, J., concur.