**Bonita G. HILLIARD, in her Capacity as Trustee of The H. David and Bonita G. Hilliard Living Trust, Appellant–Plaintiff,**

v.

**Timothy E. JACOBS, Appellee–Defendant.**

No. 28A05–0702–CV–120.

Court of Appeals of Indiana.

Oct. 18, 2007.

Rehearing Denied Dec. 10, 2007.

P. Gregory Cross, The Cross Law Firm, P.C., Muncie, William N. Riley, Jamie R. Kendall, Price Waicukauski & Riley, LLC, Indianapolis, IN, Attorneys for Appellant.

George T. Patton, Jr., Peyton L. Berg, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellee.

Karl L. Mulvaney, Nana Quay–Smith, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Amicus Curie, Association of Indiana Life Insurance Companies.

## OPINION

BARNES, Judge.

### Case Summary

Bonita Hilliard, in her capacity as the trustee of the H. David and Bonita G. Hilliard Living Trust, appeals the trial court's granting of Timothy Jacobs's motion for summary judgment. We affirm.

### Issue

Bonita raises one issue, which we restate as whether the trial court properly determined that Jacobs was entitled to summary judgment because he was permitted to maintain the life insurance policies on David after the insurable interest that gave rise to the policies terminated.

### Facts

In 1997, Jacobs and David entered into a business arrangement and created Advance Marketing Technology, LLC ("AMT"). Each had a 50% ownership interest in the business, which grew to be successful. In 1999, Jacobs and David executed a cross-purchase agreement in which they each agreed to purchase term life insurance policies on the other in the amount of $200,000 so that in the event of

unexpected death of Jacobs or David, the other would be able to buy out the deceased member's shares of AMT. In 2001, they executed another cross-purchase agreement providing for the purchase of $2,000,000 policies on the life of the other.

Both agreements contained the following language:

*Section 6. Disposition of the Policies.* In the event that a Member should sell his units during his lifetime under the terms of AMT's Operating Agreement, or in the event of the death of a Member, the surviving or remaining Member shall have the option, exercisable within twenty (20) days of the date of such event, to purchase any life insurance policies on his life owned by the selling or deceased Member subject to this Agreement. A Member shall give written notice of his intention to buy such policies to the other Member or to the personal representative of the deceased Member. The purchase price for any such policy shall be the cash value of such policy as of the date of purchase or One Hundred Dollars, whichever is greater. If the foregoing option is not exercised within said 20–day period, AMT shall have a similar option for an additional ten (10) day period. If neither the Member nor AMT exercises the option, the policy shall no longer be subject to this Agreement.

App. pp. 191, 199.

On October 14, 2002, Jacobs and David entered into a redemption and settlement agreement regarding their interests and the sale of AMT. Eventually, AMT's assets were sold to a third party. AMT was officially dissolved on November 15, 2002. Around the time of the dissolution, David asked Jacobs if he wanted to trade the life insurance policies that they held on the other's life. Jacobs declined and continued to pay the premiums on the policies he held on David's life.

On January 13, 2003, David filed a complaint, which was subsequently amended to include in part a request for declaratory judgment. David requested that Jacobs convey the life insurance policies to him or that Jacobs cancel the policies. On April 14, 2004, the trial court granted David's motion for partial summary judgment and ordered Jacobs to terminate the life insurance policies he held on David's life.

On April 26, 2004, Jacobs filed an interlocutory appeal. On July 22, 2004, while the appeal was pending, David died from ventricular fibrillation.[1] On appeal, Jacobs argued that the trial court improperly ordered him to terminate the life insurance policies because the cross-purchase agreement did not dictate termination of the policies. We concluded:

Hilliard sold his shares of AMT to Jacobs in anticipation of a sale of the business on October 14, 2002, pursuant to the Settlement Agreement signed by both parties. From the language in Section 6 above, when a member sells his units, the remaining member has the option to purchase the policy held on his own life within twenty days from the sale. Therefore, the only right triggered by Hilliard's sale was that Jacobs had the right to purchase the policy Hilliard held on his life before November 3, 2002 (20 days after the sale), and then AMT had the option of purchasing the policy on Jacobs's life before November 13, 2002 (10 days after Jacobs's right expired). Neither option was exercised leaving the policies as "no longer

---

1. On October 21, 2004, the trial court substituted Bonita, as trustee, for David, as the plaintiff.

... subject to this agreement." [App. pp. 191, 199]. Once the policies were "no longer ... subject to this agreement," it appears from the language of the Cross Purchase Agreement that the policies were merely no longer required to be maintained. We do not read this language as mandating that Jacobs should be required to terminate his life insurance policy held on Hilliard.

*Jacobs v. Hilliard,* 829 N.E.2d 629, 633 (Ind.Ct.App.2005), *trans. denied.* We also concluded that equity did not require the termination of the policy. *Id.* at 633–34. Accordingly, we reversed and remanded. *Id.* at 634.

On remand, Jacobs moved for summary judgment. Bonita also moved for summary judgment and filed a response to Jacobs's motion for summary judgment. Jacobs then filed a response to Bonita's motion for summary judgment and replied to her response. On January 31, 2007, after a hearing, the trial court granted Jacobs's motion for summary judgment and denied Bonita's motion for summary judgment, allowing Jacobs to retain the life insurance policies. Bonita now appeals.

### Analysis

Bonita argues that the trial court improperly granted Jacobs's motion for summary judgment. When reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standard as the trial court. *See Atlantic Coast Airlines v. Cook,* 857 N.E.2d 989, 994 (Ind. 2006). A party seeking summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Cook,* 857

N.E.2d at 994. Our review of a summary judgment motion is limited to the materials designated to the trial court. *Cook,* 857 N.E.2d at 994. The trial court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the nonmoving party, and resolves all doubts against the moving party. *Id.* at 994–95.

■ The parties agree that when the policies were issued, Jacobs had an insurable interest in David's life. "[A] person has an insurable interest in the life of another, where there is a reasonable probability that he will gain by the latter's remaining alive, or lose by his death...." *State v. Willett,* 171 Ind. 296, 306, 86 N.E. 68, 71 (1908) (quotations and citation omitted); *see also Miller v. Travelers' Ins. Co.,* 81 Ind.App. 618, 622, 144 N.E. 554, 555 (1924) ("It is well settled in this state that an insurable interest does not arise from the mere fact of the kinship shown, but must be a pecuniary one, and be disclosed by the facts alleged."). When AMT was operating successfully, there was a reasonable probability that Jacobs stood to gain from David remaining alive and would suffer a loss by his death. The parties also agree that upon the dissolution of AMT Jacobs's insurable interest in David terminated.

■ It is well-settled that, "Where, however, a policy is issued to one upon the life of another, the former having no insurable interest in the latter, it is void, being in the nature of a wagering contract, and hence in contravention of public policy." *Miller,* 81 Ind.App. at 620, 144 N.E. at 555. The question raised by Bonita[2] is whether an insurable interest must continue throughout the term of a life insurance policy or whether an insurable interest

---

**2.** For the sake of this appeal, we assume that Bonita is the proper party to challenge the validity of the insurance policies. *See Secor v. Pioneer Foundry Co.,* 20 Mich.App. 30, 173 N.W.2d 780, 782 (Mich.App.1969) ("The rule that only the insurer can raise the question of lack of insurable interest appears to be well supported in other jurisdictions.").

need only exist at the time the policy is issued.

The parties analogize and distinguish three Indiana statutes that are not directly on point. *See* Ind.Code §§ 27–1–12–17.1 [3], 27–8–1–6,[4] & 27–8–3–8.[5] We need not specifically address these statutes, however, because our supreme court has observed:

> As a general rule, the authorities affirm that a policy of life insurance or the appointment or designation of a beneficiary, which is valid in its inception, continues and remains valid, although the insurable interest or relationship of the beneficiary has ceased or terminated, unless it is otherwise stipulated or provided in the contract to the contrary.

*Farra v. Braman,* 171 Ind. 529, 547, 86 N.E. 843, 850 (1909). Although *Farra* involved a divorce and the rights of the named beneficiary who had been married to the insured, the owner of the policy, we see no reason why this statement of law is not binding on us today.

There is no dispute that Jacobs's life insurance policies were valid at their inception because Jacobs, as David's business partner, had an insurable interest in

---

**3.** Indiana Code Section 27–1–12–17.1 provides:

a) As used in this section, "employee" includes a director, an officer, a partner, a manager, a nonmanagement employee, and a retired employee of the employer or the employer's affiliates.

(b) As used in this section, "employer" means an individual, a corporation, a partnership, a limited liability company, and any other legal entity that has at least one (1) employee and is legally doing business in Indiana. The term includes an association of employers and the employer's affiliates.

(c) An employer that provides life insurance, health insurance, disability insurance, retirement benefits, or similar benefits to an employee of the employer has an insurable interest in the life of the employee. The trustee of a trust established by an employer for the benefit of the employer has the same insurable interest as the employer in the life of an employee. The trustee of a trust established by an employer that provides life insurance, health insurance, disability insurance, retirement benefits, or similar benefits to an employee of the employer and acts in a fiduciary capacity with respect to that employee or the employee's dependents or beneficiaries has an insurable interest in the life of the employee for whom benefits are to be provided.

(d) An employer or the trustee of a trust established by the employer may acquire insurance upon an employee in whom the employer or the trustee of the trust has an insurable interest as determined under subsection (c) if the employee consents to be insured. An employee consents to be insured if the employee is provided written notice of the insurance coverage and does not object to the insurance coverage within thirty (30) days of receipt of the notice.

(e) An insurable interest must exist at the time the contract of life or disability insurance becomes effective, but need not exist at the time the loss occurs.

(f) Proceeds of a policy issued under this section are exempt from the claims of the employee's creditors or dependents.

**4.** Indiana Code Section 27–8–1–6 provides:

A policy or certificate issued by any such an association shall be exempt from the valuation based upon the American Experience Table, or any other table of mortality, in consequence of such association conducting its business on the plan of assessing members, and such policy or certificate, when the payments thereon are made by any person other than the insured, and without the written consent of the insured, to be valid must be supported by an insurable interest.

**5.** Indiana Code Section 27–8–3–8 provides:

No corporation, association or society doing business of life insurance under this chapter shall issue any policy of life insurance in which the beneficiary named has no insurable interest. Any assignment of the policy or certificate to a person having no insurable interest in the insured life, except as security for actual debt, with remainder over to the beneficiary or to the estate of the insured, shall render such a policy or certificate void.

David's life and because David consented to the issuance of the policies. The insurance policies were procured consistent with the terms of the cross-purchase agreements. We simply cannot agree with Bonita that the termination of the insurable interest in the middle of the term rendered the insurance policies void.

Bonita urges that the life insurance policies should be found invalid "to remove any and all possible incentive to encourage the expiration of that life...." Appellant's Br. p. 21. To the extent that Bonita's concern is valid, pursuant to the "slayer's rule," "a beneficiary forfeits insurance proceeds when he 'intentionally and wrongfully' causes the death of the insured." *In re Estate of Foleno ex rel. Thomas v. Estate of Foleno*, 772 N.E.2d 490, 495 (Ind.App. Ct.2002) (citation omitted), *trans. denied; see also* I.C. § 29-1-2-12.1 (codifying the slayer's rule). Thus, Bonita's public policy concerns for "removing incentives" to harm human life are addressed by the slayer's rule. Appellant's Reply Br. p. 12.

Because these policies were valid at their inception, we find it unnecessary to extend the requirement that an insurable interest continue throughout the terms of the policies. The trial court properly granted Jacobs's motion for summary judgment.[6]

## Conclusion

Because the life insurance policies were valid at their inception, the trial court properly granted Jacobs's motion for summary judgment. We affirm.

Affirmed.

KIRSCH, J., and ROBB, J., concur.

---

6. Based on our resolution of this issue, we need not determine whether transfer or cancellation is the proper remedy requested by Bonita.