**Bonita G. HILLIARD, in her Capacity as Trustee of the H. David and Bonita G. Hilliard Living Trust, Appellant–Plaintiff,**

v.

**Timothy E. JACOBS, Appellee–Defendant.**

**No. 28A01–0904–CV–168.**

Court of Appeals of Indiana.

Nov. 16, 2009.

---

See also, 829 N.E.2d 629.

Edward W. Harris, III, Mary T. Doherty, Taft Stettinius & Hollister LLP, Indianapolis, IN, Attorneys for Appellant.

Peyton L. Berg, Bose McKinney & Evans LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

The Greene Circuit Court ordered Bonita G. Hilliard ("Bonita"), in her capacity as the Trustee of the H. David and Bonita G. Hilliard Living Trust, to pay post-judgment interest to Timothy E. Jacobs ("Jacobs"). Bonita appeals and argues that the trial court erred in ordering her to pay post-judgment interest because the court had not entered a money judgment subject to the post-judgment interest statute, Indiana Code section 24–4.6–1–101 (2006). We reverse and remand.

### Facts and Procedural History

This is the third appeal in this case, which stems from the business relationship between H. David Hilliard ("Hilliard") and

Jacobs, who each owned a 50% interest in Advance Marketing Technology, LLC ("AMT"). *See Jacobs v. Hilliard,* 829 N.E.2d 629, 631 (Ind.Ct.App.2005), *trans. denied.* To address the possibility that one of them might die unexpectedly, Hilliard and Jacobs entered into a cross-purchasing agreement requiring each to insure the life of the other in the amount of $200,000. *Id.* As the company grew, this amount was later increased to $2,000,000.[1] *Id.* Hilliard and Jacobs were the owners and beneficiaries of the policies, and AMT paid the premiums on the policies until the company was sold in 2002. *Id.* When AMT was sold, Hilliard and Jacobs entered into a settlement agreement to resolve all outstanding claims and demands between the two. *Id.*

After AMT was sold, Hilliard proposed that he and Jacobs swap the policies they held on the other's lives. *Id.* Jacobs declined and continued to pay the premiums on the policies he held on Hilliard's life. *Id.* Hilliard, however, decided to stop paying the premiums on the policies he held on Jacobs's life. *Id.* Hilliard then filed a complaint wherein he requested that the trial court either order Jacobs to cancel the policies he held or transfer them to Hilliard. *Id.* The trial court granted Hilliard's subsequent motion for partial summary judgment and ordered that Jacobs terminate the policies on Hilliard's life. *Id.*

Jacobs filed an interlocutory appeal and also moved to stay enforcement of the trial court's order that he terminate the policies. *Id.* The trial court granted Jacobs's motion for a stay pending appeal, and also granted Hilliard's request that Jacobs change the beneficiary on the policies to the trial court clerk and to physically transfer the policies to the clerk. *Id.* Hilliard passed away from ventricular fibrillation on July 22, 2004, while the appeal was pending. *Id.*

On interlocutory appeal, a panel of this court held that the cross-purchase agreement did not require Jacobs to terminate the term life insurance policy he held on Hilliard's life. *Id.* at 633. The court further concluded that equity did not require the termination of the policy and, therefore, reversed and remanded. *Id.* at 633–34.

On remand, AIG, one of the insurance companies that had issued one of the policies, filed a complaint seeking to interplead the $1,500,000 proceeds on the policy it had issued. AIG's complaint also requested that the trial court determine whether the policy was due and owing and, if so, to whom. Thereafter, West Coast Insurance, the insurance company that had issued the other policy on Hilliard's life, filed a similar complaint seeking to interplead the $1,000,000 proceeds on the policy it had issued. The trial court denied West Coast's request to interplead and never ruled on AIG's request. Eventually, both Jacobs and Bonita moved for summary judgment. After a hearing on the matter, the trial court granted summary judgment in favor of Jacobs, and Bonita appealed. The trial court stayed its summary judgment order on the condition that Bonita post a $250,000 letter of credit as security pending appeal.

On appeal, both parties agreed that Jacobs had an insurable interest in Hilliard's life when the policies were issued. *See Hilliard v. Jacobs,* 874 N.E.2d 1060, 1063 (Ind.Ct.App.2007), *trans. denied.* Bonita, however, argued that the insurable inter-

---

1. The policy proceeds were to be used to fund a buy-out of the deceased member's shares.

*Id.*

est must continue throughout the term of the life insurance policy, whereas Jacobs argued that the insurable interest need exist only at the time the policy was issued. *Id.* The court on appeal held that " 'a policy of life insurance or the appointment or designation of a beneficiary, which is valid in its inception, continues and remains valid, although the insurable interest or relationship of the beneficiary has ceased or terminated, unless it is otherwise stipulated or provided in the contract to the contrary.' " *Id.* (quoting *Farra v. Braman,* 171 Ind. 529, 547, 86 N.E. 843, 850 (1909)). Because the policies on Hilliard's life were valid at their inception, and because there were no contract provisions to the contrary, the court held that the policies were valid and upheld the trial court's grant of summary judgment in favor of Jacobs. *Id.* at 1065.

On May 2, 2008, Jacobs filed a motion to lift the stay the trial court had issued during the appeal and to order the trial court clerk to return the insurance policies to Jacobs. The trial court granted Jacobs's motion as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Greene County Clerk is hereby ordered to return to [Jacobs], through his attorney(s), the AIG Life Insurance Policy ... and the West Coast Life Insurance Policy ... and to relinquish and reassign to [Jacobs] all rights in respect to these policies in cooperation with [Jacobs]'s attorneys.

Appellant's App. p. 134. The clerk then returned the policies to Jacobs, who presented the policies to the insurance companies and received the full value of $2,500,000 from the insurance companies plus 3% interest, i.e., $289,771.52, pursuant to Indiana Code section 27–1–12–35.

On June 5 2008, Jacobs filed a request for damages under Indiana Trial Rule 62(D), claiming that the delay in his receiving the full value of the policies resulted in "costs, interest and damages for delay" from the date the trial court had entered summary judgment in his favor until he finally received the proceeds of the policies. Appellant's App. p. 201. Bonita responded by arguing that Jacobs had already been paid in full and also sought release of the $250,000 letter of credit she had filed during the pendency of the second appeal. Jacobs responded by claiming that, had he received the policy proceeds earlier, he would have earned more than the 3% interest rate he had received from the insurance companies.

After several filings by both parties, the trial court held a hearing on the matter on January 15, 2009. At this hearing, Jacobs argued that he was entitled to an award of 8% interest pursuant to Indiana Code section 24–4.6–1–101 ("Section 101") because the trial court's order granting him possession of the policies was effectively a money judgment. On March 6, 2009, the trial court issued an order agreeing with Jacobs's argument and awarding him 8% interest on the proceeds of the policies, less the 3% interest that the insurance companies had already paid to Jacobs, for a total of $175,503.78, payable from the $250,000 letter of credit filed by Bonita. Bonita now appeals.[2]

**Discussion and Decision**

The parties dispute the nature of the issue before us and, consequently, also disagree as to the appropriate standard of review. Bonita claims the issue before us is one of statutory interpretation, i.e., whether the trial court's award of post-judgment interest was proper under Section 101.

---

**2.** Both parties agree that the trial court's order was an interlocutory order appealable as of right because it is "[f]or the payment of money." Ind. Appellate Rule 14(A)(1).

Bonita therefore claims that we should review the trial court's order *de novo*. *See Cox v. Cantrell*, 866 N.E.2d 798, 805 (Ind. Ct.App.2007), *trans. denied*. Jacobs claims that we should apply an abuse of discretion standard because this is an interlocutory appeal. *See In re Paternity of Duran*, 900 N.E.2d 454, 462 (Ind.Ct.App. 2009) (noting general rule that we review interlocutory orders for an abuse of discretion). Although rulings on interlocutory orders are generally reviewable under an abuse of discretion standard, when the issue on appeal is a pure question of law, the matter is reviewed *de novo*. *See Neu v. Gibson*, 905 N.E.2d 465, 473 (Ind.Ct.App. 2009) (citing *In re P.F.*, 849 N.E.2d 1220, 1223–24 (Ind.Ct.App.2006)).

Jacobs further argues that the trial court's award was justified under Indiana Trial Rule 62(D)(2), which he claims grants the trial court discretion to award interest. This rule provides in relevant part:

> Whenever a party entitled thereto desires a stay on appeal, such party may present to the appropriate court for its approval an appeal bond or an irrevocable letter of credit from a financial institution. The bond or letter of credit shall be conditioned for the satisfaction of the judgment in full together with costs, *interest*, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award.

T.R. 62(D)(2) (emphasis added). Jacobs claims that the trial court was within its discretion under Trial Rule 62(D)(2) to award interest.

We note, however, that Trial Rule 62(D) simply states that an appeal bond or letter of credit "shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay[.]" It does not set forth the manner in which interest is to be determined.

Here, both the trial court and Jacobs relied on Section 101 to calculate the amount of interest that was awarded to Jacobs, and Section 101 provides for the payment of interest only on "judgments for money." We therefore agree with Bonita that the issue before us is one of statutory interpretation. If the trial court's order on summary judgment was a judgment for money, then the trial court could properly award interest under Section 101. If it was not, then Section 101 is inapplicable.

To answer the question of whether Section 101 is applicable, we first look to the text of Section 101, which provides, "Except as otherwise provided by statute, interest on *judgments for money* whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at ... (2) an annual rate of eight percent (8%) if there was no contract by the parties." (emphasis added). The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Cox*, 866 N.E.2d at 805. The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

Here, Jacobs argued, and the trial court agreed, that its summary judgment order granting the insurance policies to Jacobs was "substantially equivalent to a money judgment, and therefore subject to the provisions of [Section 101] providing for post-judgment interest...." Appellant's App. p. 31. Bonita argues that the trial court's summary judgment order simply transferred ownership of the policies to

Jacobs, who then had to present the policies to the respective insurance companies in order to receive the proceeds. In other words, Bonita argues that the trial court's order was simply one transferring ownership of certain property to Jacobs, not a "judgment for money." Although our research has revealed no case directly on point, several cases have addressed the nature of a "judgment for money" or "money judgment."

In *United Farm Bureau Mutual Insurance Co. v. Ira*, 577 N.E.2d 588, 593 (Ind. Ct.App.1991), *trans. denied*, the insurer argued that an order requiring it to pay future medical expenses was a "money judgment" for which execution or proceedings supplemental, not a contempt action, were the exclusive remedies. The court disagreed, writing: "The key to a money judgment is the statement of an amount due. A money judgment must be certain and definite. It must name the amount due." *Id.* (citing *Kist v. Coughlin*, 222 Ind. 639, 654, 57 N.E.2d 199, 205 (1944)). Since the order requiring the insurer to pay medical expenses did not meet these criteria, it was held not to be a money judgment. *Id.*

In *Paxton v. Paxton*, 709 N.E.2d 31, 32 (Ind.Ct.App.1999), *trans. denied*, the court held that Section 101 "[b]y its terms . . . applies only to judgments for money." The court explained that "[a] money judgment 'adjudges the payment of a sum of money, as distinguished from one directing an act be done or property to be restored or transferred.'" *Id.* at 33 (quoting Black's Law Dictionary 844 (6th ed.1990)). Therefore, the court held that a marital dissolution decree wherein the wife was ordered to pay the husband a portion of her IRA account was an order to transfer property, not a "money judgment." *Id.*

In *Indiana Revenue Board v. State ex rel. Board of Commissioners of Hendricks County*, 270 Ind. 365, 369, 385 N.E.2d 1131, 1134 (1979), the court held that a mandate order requiring the Indiana Board of Revenue to pay $16,555,787.95 to ninety-one Indiana counties was a "money judgment" subject to post-judgment interest. The court reasoned that because the Revenue Board "was mandated to pay the amount of money due to the counties in a lump sum," the mandate order "was also effectively a money judgment." *Id.* We understand this case to mean that an order that requires one party to pay a specific sum of money to another party is a money judgment, regardless of the form of the judgment, i.e. a civil money judgment or a mandate order. In either case, the result is the same—one party is required to pay a specific amount of money to the other party.

From these cases, we conclude that any order *that requires the payment of a sum of money and states the specific amount due*, whether labeled as a mandate or a civil money judgment, is a "judgment for money" to which the post-judgment interest provisions of Section 101 apply. Applying this standard to the case before us, we are unable to agree with Jacobs that the trial court's order requiring the trial court clerk to return the life insurance policies to Jacobs constituted a "judgment for money." The order did not require the payment of any specific amount due; it instead granted Jacobs ownership of the policies. Because the trial court's order was not a judgment for money, the post-judgment interest provisions of Section 101 were inapplicable, and the trial court erred in awarding Jacobs 8% pursuant to this statute.

Jacobs nevertheless claims that Indiana courts have previously upheld awards of interest from orders that were "substantially equivalent to money judgments." Appellee's Br. p. 26. In support of this

argument, Jacobs cites *Wininger v. Purdue University*, 666 N.E.2d 455, 458 (Ind. Ct.App.1996), *trans. denied*, wherein the court held that a criminal restitution order was "the practical equivalent of a civil money judgment." However, at issue in *Wininger* was whether a restitution order which was part of a criminal defendant's sentence was enforceable by means of proceedings supplemental. *See id. Wininger* is unhelpful to the issue before us as it did not consider an award of statutory post-judgment interest.[3]

Jacobs also cites *Marshall v. Bird*, 577 N.E.2d 254, 257 (Ind.Ct.App.1991), *trans. denied*, wherein the court held that the "fundamental principle underlying ... an award [of post-judgment interest under Section 101] is that there has been a deprivation of the use of money *or its equivalent* and that, unless interest is awarded, the injured party cannot be fully compensated for the loss suffered." (emphasis added). However, in *Marshall*, the party seeking interest had retaken possession of the real estate at issue in accordance with the terms of the purchase contract. *Id.* Because he was not deprived of his property, the court held that "he [wa]s not entitled to post-judgment interest." *Id.* Thus, the question of whether the trial court's order was a "money judgment" was not directly at issue in *Marshall*, and the court's reference to "the use of money or its equivalent" is *dicta*.[4]

In conclusion, the trial court's order returning to Jacobs the insurance policies was not a "judgment for money" subject to post-judgment interest under Section 101. It was instead an order granting ownership of the policies to Jacobs. The trial court therefore erred in awarding Jacobs 8% in post-judgment interest pursuant to Section 101.[5]

Reversed and remanded.

ROBB, J., concur.

DARDEN, J., dissents with opinion.

DARDEN, Judge, dissenting.

I respectfully dissent, finding that the majority's analysis and result have elevated form over substance.

I would first note that since January of 2003, the matter of whether Jacobs could continue to maintain life insurance policies on Hilliard's life has been before the trial court. Our 2005 opinion on interlocutory appeal held that Jacobs had a property interest and could continue to hold the policies. *Jacobs v. Hilliard*, 829 N.E.2d 629 (Ind.Ct.App.2005), *trans. denied*. Thereafter, on January 31, 2007, the trial court granted Jacobs' motion for summary judgment, allowing to him retain the policies. Bonita appealed, and we affirmed. *Hilliard v. Jacobs*, 874 N.E.2d 1060 (Ind. Ct.App.2007), *trans. denied, cert. de-*

---

**3.** Jacobs also cites *Williamson v. Rutana*, 736 N.E.2d 1247, 1249 (Ind.Ct.App.2000), one of a line of cases which held that a dissolution decree ordering one spouse to pay money to the other was a money judgment subject to statutory post-judgment interest. However, in *Rovai v. Rovai*, 912 N.E.2d 374, 376 (Ind. 2009), our supreme court disagreed with this approach and held that Section 101 "does not compel that interest run on the various internal elements of dissolution decrees. Rather, the dissolution statutes confer upon trial courts the authority to order interest or not in the course of fashioning a just and reasonable division of property."

**4.** Even if it were not *dicta*, we are bound by the specific words of Section 101, which "[b]y its terms ... applies only to judgments for money." *Paxton*, 709 N.E.2d at 32.

**5.** We note too that our holding does not leave Jacobs without any compensation for the delay in receiving the proceeds of the life insurance policies, as he received 3% interest from the insurance companies.

*nied,* —— U.S. ——, 129 S.Ct. 287, 172 L.Ed.2d 150 (2008). Subsequently, the trial court granted Jacobs statutory interest on the policies' proceeds—accruing from January 31, 2007.

Here, the subject of this long dispute is certain insurance policies, *i.e.,* contracts. These contracts have face values in specific sums certain. The court was asked to determine who rightfully owned the policies and was entitled to the proceeds. Therefore, I would find that such a determination, on these facts, constituted a money judgment in favor of the prevailing party. Moreover, I find that the foregoing history established, pursuant to our 2007 opinion, *id.,* that as of the January 31, 2007 trial court order granting summary judgment to Jacobs, he was the prevailing party and entitled to the proceeds.

In other words, the facts of this case have long dictated certainty in the amount of the judgment, to wit: the face values of the insurance policies. Accordingly, I would find the order of that date to be a money judgment.