**James E. COX, Appellant,**

v.

**Kandice A. CANTRELL, f/k/a Kandice A. Cox, Appellee.**

**No. 20A03–0701–CV–33.**

Court of Appeals of Indiana.

May 21, 2007.

Rehearing Denied July 12, 2007.

---

William L. LaBre, Edwardsburg, MI, Attorney for Appellant.

## OPINION

MATHIAS, Judge.

James Cox ("Father") appeals the Elkhart Superior Court's sua sponte order transferring jurisdiction of a child custody proceeding to Michigan, where Father's three children are receiving therapy while in residential placement. On appeal, Father raises several issues, which we restate as:

I. Whether the trial court had the statutory authority to issue the order transferring jurisdiction of the proceedings to the Michigan court;

II. Whether the trial court violated Father's due process rights in holding a telephone conference with the Michigan court judge;

III. Whether the Indiana order violated Michigan law; and

IV. Whether the trial court committed prima facie error in transferring the proceedings to Michigan.

We affirm.

### Facts and Procedural History

On April 2, 1998, Kandice Cantrell ("Mother") filed a petition for dissolution of marriage in the Elkhart Superior Court. Mother and Father have three minor children who had resided with their parents in Elkhart County for at least five years prior to Mother's petitioning the court for a divorce. The trial court granted temporary physical custody of the children to Mother.

On April 27, 1998, the trial court conducted a hearing, and by agreement it reaffirmed the grant of physical custody to Mother and granted standard visitation rights to Father on the condition he not consume alcohol either at or within twenty-four hours of visitation time. However, on June 12, 1998, the court removed the youngest child, D.C., from Mother's care and granted Father custody. After a hearing, on June 29, 1998, the court granted Mother supervised visitation with D.C. Mother and the other two children moved in with her father, Randall Barnes, who had been convicted of child molestation. Father petitioned the court for an emergency change of custody. On August 24, 1998, the trial court ordered Father to have temporary custody of all three minor children and that Mother pay $65 a week in child support. Appellant's App. p. 82.

On August 24, 1999, Father and Mother filed a dissolution decree and property settlement agreement with the Elkhart Superior Court, waiving a final hearing. The trial court accepted the parties' dissolution agreement, which provided for joint legal custody of the three minor children but

awarded Father primary physical custody of all three children with Mother retaining standard visitation rights. The order also stipulated that neither custodial parent be permitted to "permanently remove the minor children further than 100 miles from State of Indiana or the jurisdiction of this Court until and unless the custodial parent has filed with this Court a Notice Of Intent to remove the children and shall give reasonable notice of such intention to the non-custodial parent." *Id.* at 100.

On January 16, 2001, Mother, who was still residing in Indiana, filed a petition with the Elkhart Superior Court to modify child custody. In her petition for modification of custody, Mother said that on January 15th, Father had asked her to come "after the children since he was unable to properly care for them." *Id.* at 124. The trial court held a hearing on February 5, 2001, at which Father failed to appear. The trial court granted Mother physical custody of the children, denied visitation rights to Father pending his request for such rights, and ordered Father to pay child support. *Id.* at 126.

Father fell behind in his child support obligation, and he was convicted in another court for non-support. In January 2002, Father was placed on work release out of the other court, and the Elkhart Superior Court ordered a withholding from the work release for Father's child support arrears. On January 18, 2002, Father requested visitation, and the trial court referred him for supervised visitations. In June 2002, the trial court allowed Father full unsupervised visitation with the children.

On June 15, 2006, Father and Mother jointly filed a Stipulation for Change of Custody and Support with the Elkhart Superior Court. The parties stipulated that

Mother had been awarded custody of the children by the trial court in 2001, but that Mother had "moved to the State of Michigan with the [three] minor children of the parties approximately one year ago, though she did not give notice thereof to Respondent as required by law." *Id.* at 188. The parties acknowledged that the Michigan Department of Human Services had filed a petition in Cass County, Michigan, the week prior on June 8, 2006, alleging that the children had been abused or neglected, and that the children were subsequently removed from Mother's care. *Id.* at 188–189. The stipulation stated that the children had been placed in foster care in Cass County, Michigan.[1]

The parties alleged in their stipulation that "it is in the best interests of the Minor Children of the parties for custody to be changed from [Mother] to [Father]." *Id.* On the same day, and without any hearing, the Elkhart Superior court approved the parties' stipulation, concluding that it had continuing and prior jurisdiction over the children. *Id.* at 186. The trial court further ordered the children to be returned to the state of Indiana and Father's custody as soon as possible.

On August 22, 2006, the Elkhart Superior Court received a letter from Judge Susan Dobrich of the Cass County, Michigan Probate Court, regarding the emergency petition filed in her court by the Cass County Department of Human Services. Judge Dobrich wrote:

Attorney William LaBre, on behalf of the Respondent Father, James Cox, is asserting that Elkhart County has home state jurisdiction, and in fact an Order was entered by you in that regard. Pursuant to the Uniform Child Custody Jurisdiction Enforcement Act, which is the Act under which Michigan operates, I

---

1. It was later determined that the children had been put in residential placement.

would like to schedule a telephone conference with you to discuss jurisdiction in this matter.

*Id.* at 208. With this letter, Judge Dobrich also included the initial pleadings in the pending neglect/abuse case in her court, the Lutheran Social Services of Michigan's court report indicating how the children were adjusting to residential placement, and psychological evaluations completed in Cass County of all three children, as well as Mother and Father.

The Lutheran Social Services court report indicated that D.C., the youngest child, had been placed in a separate residential home from his two siblings because of his substantial needs. D.C. had exhibited violent, and even destructive, behavior in his foster home, and his foster parents had given a thirty day notice to have him removed as they did not feel they were able to meet his needs at that time due to his violent behavior. *Id.* at 222. D.C. had also been diagnosed with mild mental retardation and was taking prescription Adderall.

Z.C.'s foster parents reported that Z.C. was biting and kicking the other children, and that they were considering having him removed from their home for the safety of the other children. Z.C. also told his foster parents that he wanted to live with his Father as his Father "doesn't drink that much anymore, and if he does my grandmother will tell him to stop." *Id.* at 222. Z.C. had also complained that Mother had hit him with a glass jar, and he didn't wish to be returned to her care. *Id.* After a psychological evaluation of Z.C., a doctor at Battle Creek Counseling recommended that Z.C. receive "intensive counseling to help him process the traumatic events that have happened to him." *Id.* Z.C. was also taking prescription medication for depression.

M.C. told her foster parents that she wanted to live with Mother as Father "drinks and passes out." *Id.* at 223. An ultrasound had revealed that M.C. had "labial adhesions and may need surgery in the future." *Id.* M.C. had been recommended for therapy and psychological intervention to help her work through her emotions regarding past abuse and neglect. *Id.*

Battle Creek Counseling in Michigan also evaluated Father and Mother to determine whether and how reunification with the children could take place. The report indicated that Father had a few convictions relating to substance abuse, and that he had suffered with depression. A personality profile indicated that Father is defensive and may have a poor tolerance for stress and pressure. *Id.* at 256. Battle Creek Counseling recommended that prior to unification with the children, Father should engage in individual therapy focusing on issues related to abuse/neglect of children. *Id.* at 258.

On September 12, 2006, Judge Platt and Judge Dobrich held a telephone conference, which was placed on the record. The following exchange occurred:

JUDGE DOBRICH: Judge Platt, this is Judge Dobrich. How are you?

JUDGE PLATT: Oh, just fine.

JUDGE DOBRICH: Good.

JUDGE PLATT: You can have it.

JUDGE DOBRICH: We've got a—a mutual case together.

JUDGE PLATT: Yes, that's what I understand.

JUDGE DOBRICH: Yes. Let me kind of give you the background of what's occurred here in Michigan. We had three children with the mother, Kandice Cantrell, and your—the Respondent is James Cox.

JUDGE PLATT: Yes.

JUDGE DOBRICH: And there was a lot of issues going on with the mother. She had custody, the children had been involved in sexual play among themselves, so there had been a lot of serious issues—

JUDGE PLATT: Yes.

JUDGE DOBRICH:—where our Department of Human services came in and removed the children.

JUDGE PLATT: It seems to me like the kids ought to stay up there.

JUDGE DOBRICH: Well, that's kind of what we think too, but—

JUDGE PLATT: Yes.

JUDGE DOBRICH: Well, let me tell you some additional things.

JUDGE PLATT: Yes.

JUDGE DOBRICH: Apparently, the children have a lot of substantial issues—

JUDGE PLATT: Okay.

JUDGE DOBRICH:—and we have them in more than just foster care, we have them in like a residential placement—

JUDGE PLATT: Yes. Yes.

JUDGE DOBRICH:—because of that, so we've been taking action there because of the substantial issues of the children.

JUDGE PLATT: Um-hmm. And Dad's been involved in your stuff up there.

JUDGE DOBRICH: Yes, he has. He's—you know, he would rather have custody, you know, I'll be truthful with you—I think he would rather have custody and be in Indiana—

JUDGE PLATT: Um-hmm.

JUDGE DOBRICH:—but I'm not sure, you know, in my opinion, that he's at this point able to handle the substantial needs that these children—

JUDGE PLATT: Yes, I don't think so.

JUDGE DOBRICH:—have.

JUDGE PLATT: I don't think he is.

JUDGE DOBRICH: Okay. Well, I'd be more than happy to continue with jurisdiction.

JUDGE PLATT: Okay, and I'll make a—I'll make an entry in the case docket that the case is yours.

\* \* \*

JUDGE PLATT: You're working with them up there; there's no sense me working on them down here.

JUDGE DOBRICH: Well, and—and we've already provided all those services.

JUDGE PLATT: Yes.

JUDGE DOBRICH: And we'll continue, of course, to provide the services and Dad if—I think will be willing to work with us.

JUDGE PLATT: Okay. Well, I'll—I'll take care of it here.

JUDGE DOBRICH: Okay. Thank you, very much.

*Id.* at 24–26.

Following this telephone conference, on September 12, 2006, Judge Platt entered the following order: "The court having discussed this matter with the Judge in Michigan now determines that it would be in the best interest of the children if the jurisdiction was changed to the State of Michigan. Court now orders the jurisdiction changed." *Id.* at 20. Father filed a motion to correct error with the Elkhart Superior Court on October 6, 2006, which was denied on November 8, 2006. Father now appeals. Additional facts will be provided as necessary.

## I. Timeliness of Order

Father contends that the trial court lacked the statutory authority to transfer these proceedings to the Cass County

Court in Michigan. He contends that Indiana's Uniform Child Custody Jurisdiction Law ("UCCJL"), and in particular the section codified at 31–17–3–7(a), limits the time for making a forum non conveniens determination to "any time before making a decree." Consequently, since the trial court had already entered a custody order on June 15, 2006, its subsequent transfer order issued on September 12th was void as ultra vires. Father in essence argues that the Elkhart Superior Court's second order is contrary to law as it was untimely made under Indiana's UCCJL.

As this case involves interpreting a statutory provision, we review this matter de novo. *Shepherd v. Carlin*, 813 N.E.2d 1200, 1203 (Ind.Ct.App.2004). The primary goal in statutory construction is to determine, give effect to, and implement the intent of the legislature. *Id.* The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless indicated by statute. *Id.* If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Id.*

Indiana Code section 31–17–3–7, in part, provides:

A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction *any time before making a decree* if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

Ind.Code § 31–17–3–7(a) (1998) (emphasis added).

Before determining whether the Elkhart Superior Court's sua sponte forum non conveniens order should be considered untimely, we must first determine whether the court maintained continuing exclusive jurisdiction over the custody proceeding and, therefore, had the authority to enter the first order on June 15th. A trial court that grants the initial custody decree has full and continuing jurisdiction during the minority of the children to periodically order and modify custody. *Clark v. Clark*, 404 N.E.2d 23, 28 (Ind.Ct.App.1980). Under the UCCJL, it is possible for concurrent jurisdiction to exist in two state courts, but the UCCJL "is clear that there can be no concurrent *exercise* of jurisdiction between two states under the Act." *In re E.H.*, 612 N.E.2d 174, 185 (Ind.Ct.App. 1993), *aff'd by* 624 N.E.2d 471 (Ind.1993) (emphasis in original). Therefore, we must determine whether the Michigan court had concurrent jurisdiction over the children, or whether the Elkhart Superior Court maintained the authority to exercise exclusive jurisdiction in issuing the June 15th modification decree.

Indiana's UCCJL, codified at section 31–17–3–13 (1998) requires:

The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter.

Before Father and Mother filed their stipulation with the Elkhart Superior Court requesting a change of custody, on June 8, 2006, Judge Dobrich granted the Cass County Department of Human Service's emergency petition to remove the children from Mother's care until it could hold a preliminary hearing. Appellant's App. p. 203. Therefore, at the time of

Father and Mother's petition to the Elkhart Superior Court, a temporary custody modification decree had been entered in a court of another state. If the Michigan court "assumed jurisdiction under statutory provisions substantially in accordance" with the Indiana's version of the UCCJL, then under Indiana law the trial court was required to enforce the Michigan order. *See* Ind.Code § 31–17–3–13.

■ More importantly, at the time that Father and Mother filed their petition with the trial court, a custody proceeding was pending in the Michigan Court pursuant to the Cass County Department of Human Services's petition alleging Mother had physically and emotionally abused one of the children. "Indiana trial courts are prohibited from exercising jurisdiction over child custody questions when 'at the time of filing of the petition[,] a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity' " with the Indiana UCCJL. *Bergman v. Zempel,* 807 N.E.2d 146, 150 (Ind.Ct. App.2004) (quoting Indiana Code 31–17–3–6(a)); *see also Gamas–Castellanos v. Gamas,* 803 N.E.2d 665, 666 (Ind.2004) (when Louisiana exercised jurisdiction in substantial conformity with the UCCJL, the Indiana court should not have exercised its jurisdiction); *Stephens v. Stephens,* 646 N.E.2d 682, 686 (Ind.Ct.App.1995) (when Indiana and Kentucky could both properly exercise jurisdiction and Kentucky assumed jurisdiction over child's custody pursuant to an "emergency protective order" before custody petition was filed in Indiana, the Indiana court was obligated under the UCCJL to decline to exercise jurisdiction). The policy behind this provision is to prevent the entry of conflicting custody and/or visitation orders from different states. It is also intended to instill continuity and stability into a child's envi-

ronment. James M. Hult, "Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Influence Without Modification," 48 U.Colo.L.Rev. 603, 606 (Summer, 1977).

Therefore, under both Indiana Code section 31–17–3–13 and section 31–17–3–6, to determine whether the trial court improperly granted Father and Mother's petition to modify custody, we must determine whether the Michigan court exercised jurisdiction in substantial compliance with Indiana's version of the UCCJL, the jurisdictional requirements of which are set forth in Indiana Code section 31–17–3–3 (1998):

(a) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) this state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one (1) contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(3) the child is physically present in this state and the child has been abandoned; or

(4) (A) it appears that no other state would have jurisdiction under prerequi-

sites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

The Michigan court acted pursuant to its version of the UCCJL, which grants it emergency jurisdiction to protect children within its jurisdiction. A prior version of Indiana's UCCJL contained a similar emergency provision, permitting Indiana courts to exercise jurisdiction over child custody proceedings if the child was in Indiana and "(A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent[.]" *See* Ind.Code § 31–1–11.6–3 (1993). However, our legislature deleted this emergency provision in Public Law 79–1994, Section 4.

■ Arguably, under subsection (2) of the statute, Indiana would recognize that Michigan acquired jurisdiction over the children under a best interests analysis. However, we conclude we need not engage in this analysis as federal law required the trial court to give full faith and credit to the Michigan Court's custody determination. *See Bergman*, 807 N.E.2d at 153–154.

The Full Faith and Credit Clause of the United States Constitution mandates that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. Full faith and credit means that the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced. Indiana has codified

this notion at Indiana Code § 34–39–4–3, which provides that records and judicial proceedings from courts in other states "shall have full faith and credit given to them in any court in Indiana as by law or usage they have in the courts in which they originated." Full faith and credit commands deference to the judgments of foreign courts, and the judgment of a sister state, regular and complete upon its face, is prima facie valid.

*Gardner v. Pierce*, 838 N.E.2d 546, 550 (Ind.Ct.App.2005) (quotations and citations omitted).

■ Indiana courts are required to acknowledge Michigan's exercise of jurisdiction under the federal Parental Kidnapping Prevention Act ("PKPA"). *Bergman*, 807 N.E.2d at 154. The PKPA "requires each State to enforce, and not modify, custody orders entered by courts in other States if the court's decision 'was made consistently with the provisions of this Section.'" *Id.* (quoting 28 U.S.C. § 1738A(a)). Unlike Indiana's version of the UCCJL, the PKPA provides that a state court has jurisdiction if "it is necessary in an emergency to protect the child because the child, a sibling, or parent of the child has been subjected to or threatened with mistreatment or abuse." 28 U.S.C. § 1738A(c)(2)(C)(ii) (2000).

■ The Michigan court removed the children from Mother's custody because of the allegation that Mother was audio recorded being "extremely verbally aggressive towards [D.C.], including stating that [D.C.], 'f* * * * * up on the retard chart' and audio sounds of Respondent Mother striking [D.C.]." Appellant's App. p. 201. The petition further alleged that Mother's actions towards D.C. were likely indicative of how she treats the other two children, placing all of the children at physical and

emotional risk of harm. *Id.* Clearly, the Michigan court's exercise of jurisdiction to remove the children from Mother's custody fell under the purview of the emergency provision of the PKPA.

■ The facts of this case indicate that there was the equivalent of an Indiana CHINS [2] proceeding pending in Michigan and that the children had to be removed from Mother for their own physical and emotional welfare. When such a tragic emergency occurs, the state where the children are located should and does have authority under federal law to immediately take action to protect the children located within its borders. Public policy supports such law when the state where the child is physically located has the best knowledge of the circumstances as well as the resources to take immediate action to ensure the child's protection. Therefore, Michigan was exercising its jurisdiction as provided for under federal law, and Indiana was required to give full faith and credit to Michigan's temporary custody determination to put the children in residential placement for treatment.

Consequently, the Elkhart Superior Court did not properly exercise its jurisdiction in issuing the June 15th order modifying the Michigan court's custody determination and ordering the children to be returned to Father's care. The Elkhart Superior Court should have stayed proceedings on Mother and Father's petition to modify custody and contacted the Michigan court when it learned custody proceedings were pending in Michigan. *See* Ind.Code § 31–17–3–6. "Because the [Michigan] Court had entered an initial custody decree in conformity with the PKPA, the trial court should have recog-

nized and enforced that initial order." *Bergman,* 807 N.E.2d at 155. We therefore conclude that the June 15th order modifying the Michigan court's custody decree is void as violating the full faith and credit clause.[3] For this reason, the trial court was not precluded from issuing its subsequent order on September 12, 2006, transferring jurisdiction to the Michigan court.

## II. Due Process

Father next contends that the trial court violated his due process rights in holding a telephone conference with the Michigan court judge to determine the appropriate jurisdiction. Father maintains that the "most troubling aspect of the transfer order was its entry without notice or hearing." Br. of Appellant at 23. Father contends that the trial court's order is void as it did not have the "authority to raise the issue of forum non conveniens on a sua sponte basis." *Id.* at 24. We disagree.

Indiana Code section 31–17–3–6(c) (1998) provides:

> If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with sections 19 through 22 of this chapter.

■ By the plain language of this statute, not only is a trial court authorized to sua sponte communicate with another state

---

**2.** CHINS stands for child in need of services.

**3.** Because we conclude that the trial court's June 15th order was void, we decline to address the extent of Indiana Code section 31–

17–3–7(a), which provides that a trial court may make a forum non conveniens determination "any time before making a decree."

court to determine the appropriate jurisdiction, but a trial court is *required* to take such action when it learns that a proceeding concerning the custody of a child under its jurisdiction is pending in another state court.

Father maintains that Indiana Code section 31–17–3–4 requires a trial court to give the parties notice and opportunity to be heard when it sua sponte raises the issue of forum non conveniens. This provision states that

> [b]efore making a decree under this chapter, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. If any of these persons is outside this state, notice and opportunity to be heard shall be given pursuant to section 5 of this chapter.

Ind.Code § 31–17–3–4 (1998).

The word "decree" is defined by the UCCJL as "a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." Ind.Code § 31–17–3–2(4) (1998 & Supp. 2005). The trial court's order transferring jurisdiction to the Michigan court does not fit this definition. It was not a custody determination, but merely an order concluding that Michigan was the more appro-priate forum to handle the custody proceeding.

■ "We will not read into a statute that which is not the manifest intent of the legislature." *Robinson v. Gazvoda*, 783 N.E.2d 1245, 1250 (Ind.Ct.App.2003), *trans. denied* (citation omitted). For this reason, it is as important to recognize not only what a statute says, but also what a statute does not say. *See Clifft v. Ind. Dep't of State Revenue*, 660 N.E.2d 310, 316 (Ind.1995). Indiana's statute does not provide that a court is required to give notice and an opportunity to be heard before communicating with a court in another jurisdiction to determine the appropriate forum, and we decline to read such a requirement into the statute. The trial court's order finding that Michigan is the more appropriate forum does not, and in fact has not, precluded Father from actively participating in the Michigan custody proceeding, and therefore we find no due process violation.[4]

## III. Michigan Law

■ Father next contends that the Indiana court's order to transfer jurisdiction was contrary to Michigan Compiled Law section 722.1204(4). Although this question would be more properly addressed by a Michigan court with expertise in Michigan law, we nonetheless address Father's argument.

---

4. Father also contends that the trial court made a "factual finding" that he was unfit as a parent, and that his due process rights were violated as this finding was made without giving him an opportunity to be heard. Br. of Appellant at 26. During the telephone conference, the Michigan trial court judge said the children have exhibited disturbing sexual behavior towards each other requiring residential placement, and she further expressed her view that Father would not be able to handle the children's "substantial needs" at this point. This was not a "factual finding" on Father's parenting skills. Rather, the trial court's observation was intended to describe the Michigan court's knowledge of the children's needs as well as the extensive services that Michigan is currently providing the children. Clearly, such observations implicate the best interests of the children, and therefore, were proper considerations in determining the appropriate forum to address child custody.

The provision of Michigan's code at issue addresses temporary emergency jurisdiction, such as the Cass County court used in ordering the children to be removed from Mother's care. Father maintains that the purpose of communication between two state courts under this provision is limited to "determin[ing] a period for the duration of the temporary order." In essence, Father contends that under this statute a Michigan court acting under its temporary emergency jurisdiction cannot be granted full jurisdiction over child custody proceedings. We disagree.

Michigan Compiled Law section 722.1204(4) states that "[t]he purpose of a communication under this subsection is to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." This statute only addresses orders entered by a Michigan court acting under its temporary emergency jurisdiction. This statute does not address forum non conveniens determinations, and therefore should not be extended to preclude an Indiana court from transferring jurisdiction to Michigan after it is determined that Michigan is the more appropriate forum. Michigan Compiled Law § 722.1206(1), addressing simultaneous child-custody proceedings, provides:

Except as otherwise provided in section 204, a court of this state may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a child-custody proceeding has been commenced in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under section 207.

This statute affects a Michigan court's continuing jurisdiction over child custody proceedings, even proceedings that were initially conducted under Michigan's temporary emergency jurisdiction provision. Furthermore, this statute specifically provides for another state court determining that child custody proceedings should be conducted in Michigan as it is the more convenient forum. Therefore, we conclude that Indiana's order transferring jurisdiction of the child custody proceeding is not contrary to Michigan law.

### IV. Prima Facie Error

 Father next contends that the trial court abused its discretion in issuing its September 12th transfer order, which impliedly held that Indiana was a forum non conveniens. We normally review a trial court's UCCJL jurisdiction determination under an abuse of discretion standard. *Ortman v. Ortman,* 670 N.E.2d 1317, 1319 (Ind.Ct.App.1996), *trans. denied.* However, Mother has failed to file an appellee's brief. In such a case, we need not undertake the burden of developing arguments for Mother. *Butrum v. Roman,* 803 N.E.2d 1139, 1142 (Ind.Ct. App.2004), *trans. denied.* Applying a less stringent standard of review, we may reverse the trial court if the appellant establishes prima facie error. *Id.* "Prima facie" is defined as "at first sight," "on first appearance," or "on the face of it." *Id.*

Indiana Code section 31–17–3–7(c) (1998) provides the guidelines for determining whether Indiana is an inconvenient forum. It states:

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and his family

or with the child and one (1) or more of the contestants;

(3) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 1 of this chapter.

We cannot agree with Father that the trial court committed prima facie error in concluding that Michigan is the more appropriate forum for the custody proceedings. Custody had been transferred previously from Father to Mother, after a hearing at which Father failed to appear, due to Father's request and inability to properly care for the children at that time. The parties stipulated that the children had been living in Michigan with Mother for approximately one year without Father's knowledge. Appellant's App. p. 188. Furthermore, as demonstrated by the transcript of the telephonic conference between the two courts, these children are currently in residential placement and receiving therapy in Michigan. It is apparent that these children have serious psychological issues, as they have been engaging in sexual play with one another. D.C. and Z.C. have demonstrated violent behavior towards other children, and M.C. may have to receive surgery for labial adhesions.

Battle Creek Counseling, located in Michigan, has conducted psychological evaluations of all three children as well as Mother and Father, upon which it has proposed recommendations for visitation with both parents and perhaps someday unification. Under the facts presented here, "substantial evidence concerning the [children's] present or future care, protection, training and personal relationships is more readily available" in Michigan, which at this point in time has substantially more knowledge than the Indiana court of the children's emotional and psychological needs. *See* Ind.Code § 31–17–3–7(c)(3). Likewise, Michigan "has a closer connection with the [children]" given that the children have lived in that jurisdiction for at least a year. *See* Ind.Code § 31–17–3–7(c).

The UCCJL is intended to protect the best interests of the child. *Clark*, 404 N.E.2d at 33. As stated earlier, one of its primary purposes is to ensure continuity and stability in a child's environment. In fact, Indiana Code section 31–17–3–1(a)(1) states that the purpose of the UCCJL is to avoid "shifting of children from state to state with harmful effects on their well-being." We cannot conclude that the trial court committed prima facie error in deciding that such continuity and stability would best be served by allowing the children to remain in Michigan under their current residential treatment plans and by authorizing the Michigan court to resolve future custody disputes.

### Conclusion

We conclude that the trial court's order transferring jurisdiction of the custody proceedings to the Michigan court was not contrary to either Indiana or Michigan law, that its telephonic conference with the Michigan court did not violate Father's due process rights, and finally that the trial court did not commit prima facie error in transferring jurisdiction of the case to Michigan.

Affirmed.

DARDEN, J., and KIRSCH, J., concur.