## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 15 2017, 7:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dale W. Arnett
Winchester, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dennis Parrish, <br> *Appellant,* <br><br> v. <br><br> Susan Parrish Purcell, <br> *Appellee.* | December 15, 2017 <br><br> Court of Appeals Case No. <br> 68A05-1705-DR-1128 <br><br> Appeal from the Randolph Circuit Court <br><br> The Honorable Jay L. Toney, Judge <br><br> Trial Court Cause No. <br> 68C01-1205-DR-402 |

**Barnes, Judge.**

## Case Summary

[1] Dennis Parrish appeals the trial court's interpretation of his marital settlement agreement with Susan Parrish Purcell ("Purcell"). We affirm.

## Issue

The sole issue before us is whether the trial court erred in interpreting the parties' marital settlement agreement as requiring Parrish to divide with Purcell all proceeds from the parties' wind farm lease agreement.

## Facts

During the parties' thirty-six year marriage, they entered into a wind farm project lease and agreement ("WF Contract") wherein Horizon Wind Energy, LLC ("Horizon"), agreed to lease a portion of the parties' farmland for the operation of "a commercial wind power electric generation facility consisting of wind-power turbines and generators and other related equipment[.]" Joint Exhibit 2 p. 1.

On April 11, 2012, Purcell filed for dissolution of the parties' marriage. On October 15, 2012, the parties, pro se, filed a marital settlement agreement ("Settlement") which, in part, addressed the WF Contract. The trial court approved the Settlement, and the marriage was dissolved. The Settlement provided in part:

> The terms of this divorce settlement has [sic] been decided and agreed upon by both Susan Parrish [Purcell] and Dennis Parrish. This Agreement will remain valid until paid in full by Dennis Parrish to [Purcell] regardless of marital status or remarriage of either party. . . . .

* * * * *

These payments are not for spousal maintanence [sic] or child support, they are a settlement from propertys [sic] that was [sic] acquired during the 35 year marriage located at [redacted], Modoc, Indiana 47358 [("Farm")].

Payment amounts and dates that were agreed upon by [the parties] are as follows:

1) 5,000.00 from fall harvest to be paid every year no later than Dec. 31[;]

2) 2,500.00 paid by December 15[; and]

3) 2,500.00 paid by March 30[.]

Payments will be made by [Parrish] to [Purcell] as listed above with first payment starting in Fall of 2012 and continuing yearly until last payment is made in March of 2023.

Any windmill energy contracts that are signed for leasing on the farmland owned and operated by [Parrish] will have income divided equally between [the parties] until both children . . . have graduated college, at which time full right of income from wind energy will return to [Parrish].

Upon divorce both [Parrish] and [Purcell] will hold sole ownership of their household residence. . . . .

App. Vol. IV pp. 19-21.

[5] On January 6, 2017, Purcell filed an information for a contempt citation wherein she alleged that Parrish had withheld income statements and monies

due to her under the WF Contract and had, thereby, failed to comply with the Settlement.[1] At the hearing on the contempt motion on February 24, 2017, Purcell testified that Parrish owed her $17,500 in farm payments as well as an unknown sum of unpaid windmill payments for 2015 and 2016. Parrish testified that, in 2015, he collected taxable income of $13,695 under the WF Contract, of which only $5,000 was income from electricity generation; the balance, he maintained, was acreage rental income that was his alone in compensation for Horizon's use of the farmland for access roads, towers, underground wiring footage, and related uses that rendered the land unsuitable for farming. At the close of the hearing, the trial court found Parrish in contempt.

---

[1] Purcell's exhibits included a check from Parrish in the amount of $625.00 and his accompanying note which stated:

> Sue, this is the quarter payment that the Turbine makes for Electric. This will come 4 times per year.
>
> $5000     Total
> 2500      Half
> ÷ By 4
>
> I feel that your [sic] very selfish asking for this, it belongs to the Farm which you left. I'll make the $5000 payment at Harvest but the other [two] 2500 payment [sic] will depend on Beans price. When I sign [sic] the [marital settlement agreement] Beans were $13 and [are] now around [$]9.50, lost acres. Can't do it I have to survive to [sic]. Need to talk about it.

App. Vol. III pp. 9-10. The "lost acres" reference pertains to a forced sale of sixty acres of farmland that was occasioned by financial hardships that Parrish experienced.

[6]     At a review hearing on April 21, 2017, the parties asked the trial court to determine what portion of the proceeds from the WF Contract was subject to division under the Settlement. That day, the trial court entered an Order that stated:

> 1.      That the parties agree that Dennis Parrish is in arrears on his payments to [Purcell] under the Marital Settlement Agreement in the sum of $20,000.00 as of April 21, 2017.
>
> 2.      That the parties request the Court to define the term "windmill energy contracts" as the term 'is used on page 3 of the parties' Marital Settlement Agreement.
>
> 3.      That [Purcell] believes that income from "windmill energy contracts" includes all income received from Horizon Wind Energy . . . .
>
> 4.      That [Parrish] believes the term should be interpreted to mean only the amount paid for the "Generating Units" portion[.]
>
> 5.      That there is no provision in the Marital Settlement Agreement which divides the proceeds from the Lease other than the paragraph which discusses "windmill energy contracts."
>
> 6.      That if the Court limits the meaning of the "windmill energy contracts" to include only the amounts received for the "Generating Units", there would be no provision for division of other amounts paid pursuant to the Lease.
>
> 7.      That the Court should interpret the parties' agreement consistent with the document's plain meaning if possible.

8.      That by not including any other provision for allocating proceeds from the Lease, it appears that the parties intended to include all proceeds in the term "windmill energy contracts".

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that Dennis Parrish is in arrears on his payments to [Purcell] under the Marital Settlement Agreement in the sum of $20,000.00 as of April 21, 2017.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that [Parrish]'s obligation to [Purcell] under the Lease includes all proceeds received from the wind farm parent company, to be divided according to the terms of the Marital Settlement Agreement.

App. Vol. II pp. 21-22.  Parrish now appeals.

# Analysis

Parrish argues that the trial court erred in its interpretation of a provision of the Settlement.  Specifically, he challenges the trial court's interpretation of "windmill energy contracts" to "include payment for acreage, access road, underground wiring footage and interference with quite [sic] enjoyment of the occupied residence on the farm instead of only the payment for the energy generating units[.]"  Appellant's Br. at p. 4.[2]

We initially note that Purcell has failed to file an appellee's brief.  In such a situation, we will not undertake the burden of developing arguments for her.

---

[2] Purcell did not file an appellee's brief.

*Cox v. Cantrell,* 866 N.E.2d 798, 810 (Ind. Ct. App. 2007). We apply a less stringent standard of review, and we may reverse the trial court's decision if the appellant can establish *prima facie* error. *Id.* Prima facie means "at first sight, on first appearance, or on the face of it." *Id.*

[9] Upon dissolution of marriage, parties are free to craft their own settlement agreement, and such agreements are contractual in nature and binding. *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind. Ct. App. 2000). General rules applicable to the construction of contracts govern the construction of settlement agreements. *Id.*

> The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court. Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.

*Id.* (internal citations omitted).

[10] Here, the lone provision in the Settlement concerning the WF Contract clearly and unambiguously states that income from the WF Contract is to be divided equally between the parties. The Settlement thus implicitly contemplated that the parties would receive identical payments. Had the parties intended to distinguish between income from electricity generation and income from other

uses of the farmland, as Parrish contends, they should have so stated. *See Niccum,* 734 N.E.2d at 639 ("Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions."). We decline to find an ambiguity merely because Parrish disagrees with Purcell's reading of the parties' Settlement. *See id.* ("The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms."). Because the terms of the Settlement are unambiguous, we will not consider extrinsic evidence regarding the parties' intentions and the particulars of the WF Contract. Additionally, we agree with the trial court that, by electing against including other provisions for allocating proceeds from the WF Contract, "it appears that the parties intended to include all proceeds in the term 'windmill energy contracts.'" App. Vol. II p. 22. We conclude that the trial court did not err in its interpretation of the Settlement provision.

# Conclusion

[11] The trial court did not err in interpreting the unambiguous Settlement provision concerning the WF Contract according to its plain and ordinary meaning. We affirm.

Affirmed.

May, J., and Bradford, J., concur.